UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-cv-10191-DPW |
| ) | |
| $722,767.41 as substitute res ) | |
| for 25 Royal Road, Brookline, ) | |
| Massachusetts. ) | |
| ) | |

**UNITED STATES' OPPOSITION TO KURT WALTER'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND TO FILE AN UNTIMELY VERIFIED STATEMENT**

In a motion addressed to the equitable powers of the Court, Kurt Walter now seeks to set aside the default entered against him -- which he previously chose not to oppose -- and asks that the Court permit him to file an untimely verified statement. The Court should deny this motion because, as the facts of this case show, Kurt Walter cannot approach the required showing of "good cause" to remove the default.

As explained in more detail, both below and in the attached Affidavit of Jennifer Zacks, counsel representing Kurt Walter in the related criminal case was well aware that the United States had filed this complaint seeking civil forfeiture of 25 Royal Road, Brookline, Massachusetts ("25 Royal Road" or "the Defendant Property"). Counsel also knew that his client had a 50% interest in the Defendant Property. However, counsel chose not to file an answer, a timely verified statement setting out Kurt Walter's claim -- or even an appearance in the civil forfeiture action. In addition, Kurt Walter's counsel knew, not only that the United

States was negotiating with other claimants regarding an interlocutory sale, but also that the United States was relying on the written assurance that Kurt Walter would not file a claim in this action.  However, even when served with the United States' motion for entry of default against Kurt Walter, Kurt Walter's counsel chose not to oppose it.  Only after the interlocutory sale was completed according to the negotiated terms, did Kurt Walter's counsel seek to participate in this action.  In sum, the equities do not tip in Kurt Walter's favor.

### Statement of Facts

The United States filed this <u>in</u> <u>rem</u> civil forfeiture action against the Defendant Property, 25 Royal Road, on January 27, 2004. On February 6, 2004, to ensure prompt notice to all interested parties, the United States served (both by facsimile and by certified mail) copies of the complaint and monition on all potential claimants, including William J. Cintolo, Kurt Walter's counsel in the related criminal case, <u>United States v. Bannerman, et al.</u>, No. 03-10370-DPW.  The complaint and monition included specific directions and time limits for filing the verified statements required to participate in a civil forfeiture action. In his affidavit, Mr. Cintolo admits that he was served with a copy of the United States' complaint and monition on February 6, 2004.[1]

---

[1] Out of an abundance of caution, in its motion for entry of default, the United States used the latest possible date, February 13, 2004, the date that Mr. Cintolo was served by certified mail,

Cintolo Aff. ¶3. However, Mr. Cintolo chose not to file an appearance in the civil action and, similarly, chose not to file an answer or verified statement on behalf of his client, Kurt Walter.

Counsel for Melissa Walter, William Abendroth (representing the estate) and Peter Krupp (representing Ms. Walter personally), indicated that they would be filing an answer and verified statement on Melissa Walter's behalf. Similarly, Steven T. Byer (who, together with Paul Eysie, prior to the commencement of this civil forfeiture action, had signed an agreement to purchase 25 Royal Road), acting pro se, indicated that he would file a verified statement regarding his interest in 25 Royal Road. Both Melissa Walter and Steven Byer filed timely verified statements.

Counsel for Melissa Walter immediately entered into negotiations with the United States, seeking to obtain the United States' consent to an interlocutory sale of the Defendant Property based on a preexisting sale agreement with Steven Byer and Paul Eysie. Because no counsel had appeared on behalf of Kurt Walter in the civil forfeiture action, he was not a direct party to these negotiations. However, the United States understood that, through counsel for Melissa Walter and for the estate, Kurt Walter and his counsel were aware of the progress of the negotiations.

During these negotiations, the United States raised two

---

to begin calculating the 30-day filing period. Obviously, since Mr. Cintolo now acknowledges receipt of service on February 6, 2004, the 30-period actually ended on March 5, 2004.

principal concerns.  The first was whether the agreed-upon sale price (which apparently was agreed upon the day before the indictment of Kurt Walter was returned) accurately reflected the true value of the property.  This concern was magnified by the fact that, at the time potential buyers viewed the property, one of the closets contained a large number of firearms, which may have tended to discourage other, higher offers to purchase 25 Royal Road.  In addition, an appraisal of the property valued 25 Royal Road at $820,000, that is, $55,000 above the agreed-upon purchase price.

The United States' second principal concern was whether a claim would be filed on behalf of Kurt Walter to his 50% share of the Defendant Property.  Although no counsel had appeared on behalf of Kurt Walter in the civil action, the United States delayed circulating a draft of the proposed joint motion to allow an interlocutory sale, while waiting to see if any claim would be filed on Kurt Walter's behalf.  On February 27, 2004, the United States received a letter signed by Mr. Krupp, urging the United States to forward the draft motion.  The letter stated, in part:

> As you know, Bill Cintolo is representing Kurt Walter.  Bill told me yesterday that Kurt will not be asserting an interest in the property at 25 Royal Road.

Attached as Exhibit A.  A notation at the bottom of the letter indicated that a copy of the letter was sent to Mr. Cintolo.

Attached to the letter was a verified statement by Melissa Walter, claiming an interest in the Defendant Property.  Because

Melissa Walter's verified statement was not explicit as to precisely what interest she claimed in the Defendant Property, the United States engaged in several conversations with Mr. Krupp and Mr. Abendroth to clarify this point.  In those conversations, the United States repeatedly expressed its view that Massachusetts law did not give the executrix any independent property interest in addition to her 50% share under the will, and, therefore, Melissa Walter could assert a claim to only 50% of the Defendant Property.

Counsel for Melissa Walter agreed with this analysis and, as a result, the United States drafted and circulated a joint motion for interlocutory sale for signature by the parties to the civil forfeiture action.  The joint motion expressly specified that Melissa Walter was claiming only a 50% interest in the Defendant Property and that no claim had been filed to the remaining 50% by Kurt Walter, the only other party known to have any interest. Relying on the information received from Mr. Krupp, the joint motion expressly stated "Kurt Walter has stated, though counsel, that he does not plan to file a verified claim in this civil action."  Joint Motion ¶10.  In addition, the joint motion specifically provided that the United States would file a motion for entry of default and for a default judgment against the unclaimed 50% interest, allowing it to be forfeited to the United States.

The final draft was sent to the parties for their signature on

March 19, 2004 and was filed with the Court on March 22, 2004. The Court entered an order granting the joint motion for interlocutory sale on March 23, 2004.

Also on March 23, 2004, as contemplated in the joint motion, pursuant to Rule 55(a) of the Federal Rule of Civil Procedure, the United States moved for entry of default against Kurt Walter, based on his failure to file a timely verified statement to the remaining 50%. Mr. Cintolo was served with this motion.

In his affidavit, Mr. Cintolo states that on March 24, 2004, he learned that the United States had moved for entry of default against his client. However, Mr. Cintolo did not file any opposition to the motion for entry of default, nor did he contact the United States. On March 26, 2004, this Court entered an electronic order of default against Kurt Walter, which was entered on the docket on March 29, 2004. Following the entry of the electronic order of default, the United States filed a motion for a judgment of default.

On March 26, 2004, the closing for the sale of 25 Royal Road occurred, as provided for in the joint motion. One week later, on April 2, 2004, several counsel for Kurt Walter, including Mr. Cintolo, telephoned the United States to request that it withdraw its motion for default judgment.

## Argument

Kurt Walter cannot meet his burden of showing that he is

entitled to the equitable relief he seeks.  The documents show that Mr. Cintolo knew, not only that the United States was negotiating regarding a potential interlocutory sale of the property, but also that the United States was relying on the written assurance that Kurt Walter would not file a claim.  Despite this, counsel for Kurt Walter chose not to participate in this civil forfeiture action in any way until after interlocutory sale had occurred according to the negotiated terms.  Under these circumstances, where the United States' agreement to the interlocutory sale was premised on assurances that Kurt Walter would not file a claim, removing the default would obviously prejudice the United States.

Because this Court has already entered a default against Kurt Walter pursuant to Rule 55(a), the standards for setting aside that default are found in Rule 55(c).  Rule 55(c) provides that relief from an entry of default may be granted for "good cause shown."  See United States v. $23,000 in United States Currency, 356 F.3d 157, 164 (1st Cir. 2004).[2]  In determining whether the movant has established "good cause," the First Circuit has identified a variety of factors that may be taken into consideration by the Court, including: (1) whether the default was willful; (2) whether setting it aside would prejudice the opposing party; (3) whether a meritorious defense is presented; (4) the nature of the defendant's

---

[2] In contrast, the "excusable neglect" standard cited by Kurt Walter in his motion applies to the setting aside of a final judgment of default.  See Rule 60(b); United States v. $23,000, 356 F.3d at 164.

explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion to set aside entry of default.  See KPS & Assocs. v. Designs by FMC, 318 F.3d 1, 12 (1st Cir. 2003); McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 503 (1st Cir. 1996).  However, none of these factors is, in and of itself, determinative, and, at bottom, because Rule 55(c) is an "'express[ion of] the traditional inherent equity power of the federal courts,'" the Court has broad discretion in determining whether, under the particular facts of the case, "good cause" exists for the removal of the default.  KPS, 318 F.3d at 12 (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §2692 (1998)).  Thus, in applying Rule 55(c), "each case must necessarily turn on its own unique circumstances." Id. (citation omitted).  However, in every case, the burden of establishing "good cause" for the removal of a default rests on the party seeking to remove the default.  KPS, 318 F.3d at 12.

On the facts of this case, Kurt Walter cannot even begin to show the "good cause" necessary to remove his default, particularly in light of the clear prejudice to the United States.  Kurt Walter's counsel proffers the following explanation for his considered and intentional decision not to file a timely verified statement on behalf of his client.  Mr. Cintolo avers that he erroneously believed that Melissa Walter, in her capacity as executrix, would file a verified statement of interest to Kurt

8

Walter's 50% interest in the Defendant Property. Mr. Cintolo claims that he derived this mistaken belief from a conversation with Melissa Walter's counsel, Mr. Krupp. Mr. Cintolo goes on to assert that he did not learn that Melissa Walter had not filed a claim to Kurt Walter's 50% interest until March 24, 2004, when he received a copy of the United States' motion for entry of default.[3]

However, as the attached letter of February 27, 2004 indicates, Mr. Cintolo was well aware, not only of the ongoing negotiations regarding the sale of the Defendant Property, but also of the fact that the United States had been assured that his client would not file a claim. Under these circumstances, assuming that Mr. Cintolo subjectively believed that a claim would be filed **for** Kurt Walter, although not **by** Kurt Walter, his failure to correct the impression given to the United States was, at best, disingenuous. Moreover, although Mr. Cintolo chose not to appear in this action and, therefore, was not a party to the interlocutory sale agreement, it is difficult to believe that he was wholly ignorant of its terms. In addition, it is, at the least, notable

---

[3] Not only did counsel for Kurt Walter receive ample notice of this civil forfeiture action, but, in addition, at the time the civil forfeiture action was filed, counsel for Kurt Walter had already been aware for several months that the United States was seeking to forfeit Kurt Walter's interest in 25 Royal Road, based on precisely the same facts underlying in this civil forfeiture action. A criminal indictment in United States v. Bannerman, et al., No. 03-10370-DPW, which specifically alleged that 25 Royal Road was subject to criminal forfeiture was returned on December 4, 2003 and the United States filed a lis pendens on 25 Royal Road on December 5, 2003.

that Mr. Cintolo did not oppose the United States' motion for entry of default. Given the circumstances of the case, the prejudice to the United States is manifest -- its negotiations regarding the interlocutory sale were expressly premised on the assurance that Kurt Walter would not file a claim, allowing the United States to immediately forfeit the unclaimed 50%. Had the United States been informed that Kurt Walter intended to file a claim, the United States might well not have consented to the interlocutory sale, particularly in light of its expressed concerns about the adequacy of the price. In the absence of the United States' agreement to the sale at the previously-arrived-at price, the Defendant Property (without the closetful of firearms) would likely have been sold to the highest bidder on the open market, potentially obtaining a higher price closer to the appraised value of $820,000.[4]

Other factors listed above also weigh heavily against a finding of good cause. As Mr. Cintolo's own account reveals, his failure to file a verified statement was willful, in that, despite being aware of the civil forfeiture action, the requirements for filing a verified statement and his client's interest in the

---

[4] While, theoretically, Melissa Walter could also benefit from a higher price, any benefit to her would be offset by the fact that she would be required to pay the expenses for the Defendant Property until a sale could be completed. Moreover, Melissa Walter's potential benefit from a higher sale price is wholly contingent on her having a meritorious defense to the civil forfeiture action. In this case, as discussed *infra*, the United States' evidence in favor of forfeiture is very strong and consists, in part, of Melissa Walter's own recorded statements.

Defendant Property, Mr. Cintolo made an intentional and knowing decision to forego filing a claim (or even an appearance) on his client's behalf. Mr. Cintolo does not describe any defense -- much less the required "meritorious" defense -- that his client might advance to counter the United States' extremely strong evidence that the Defendant Property was used to facilitate Kurt Walter's drug trafficking. As noted in the affidavit attached to the complaint in this case, that evidence includes recorded conversations in which Melissa Walter expressly refers to the use of the property to store drugs.[5] In addition, the timing of the motion to remove the default also weighs against a finding of good cause. By his own account, Mr. Cintolo learned of the United States' motion for entry of default, yet did not file an opposition, choosing, instead, to take no action whatsoever until after the interlocutory sale had been completed.

For the foregoing reasons, because Kurt Walter has failed to

---

[5] Moreover, contrary to Kurt Walter's assertion, as a matter of Massachusetts law, Melissa Walter could not have filed a claim to Kurt Walter's 50% share, since, in her capacity as executrix, she had no property interest the 50% share left to Kurt Walter under the will. See United States v. One-Sixth Share, 326 F.3d 36, 41 (1st Cir. 2003) (a party must have an ownership or possessory interest in the defendant property to participate in a forfeiture action). Under Massachusetts law "[t]itle to real estate devised by will passes directly, on probate of the will, to the devisee and relates back to the instant of the death of the testator." Calumet Corp. v. Vespa 2003 WL 1489212, *4 (Mass. Super. Mar. 20, 2003); Daley v. Daley, 300 Mass. 17, 21, 14 N.E.2d 113, 116 (1938). The cases cited in Kurt Walter's motion at p.5 are irrelevant because they do not address the property interest of an executrix in real property.

show "good cause," the Court should not remove the entry of default against Kurt Walter and should not allow him to file an untimely verified statement.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

      By: /s/ Jennifer H. Zacks
          JENNIFER H. ZACKS
          Assistant U.S. Attorney
          Suite 9200
          1 Courthouse Way
          Boston, MA 02210
          (617) 748-3283

Date: 4/20/04

**CERTIFICATE OF SERVICE**

    I, Jennifer H. Zacks, Assistant U.S. Attorney, hereby certify that the foregoing Opposition to Kurt Walter's motion to set aside entry of default and to file an untimely verified statement was served upon the following individuals by first class mail, postage prepaid:

William J. Cintolo, Esq.
Cosgrove, Eisenberg & Kiley, P.C.
One International Place
Suite 1820
Boston, MA 02210

Nicholas A. Kenney
Cosgrove, Eisenberg & Kiley, P.C.
One International Place
Suite 1820
Boston, MA 02210

Peter B. Krupp, Esq.
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109

Paul W. Eysie
853 Washington Street
Norwood, MA 02062

Steven T. Byer
1443 Beacon Street
Brookline, MA  02446

                                                  /s/ Jennifer H. Zacks
                                                  Jennifer H. Zacks
                                                  Assistant U.S. Attorney

Date: 4/20/04