UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$722, 767.41 AS SUBSTITUTE RES<br>FOR 25 ROYAL ROAD, BROOKLINE, MA,<br>Defendant. | )<br>)<br>) Civil Action No.<br>) 04-10191-DPW<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM IN REPLY TO THE GOVERNMENT'S OPPOSITION
TO MOTION FOR LEAVE TO FILE LATE CLAIM

The government in its opposition to Kurt Walter's Motion for Leave to File a Late Claim concludes that the equities do not tip in Mr. Walter's favor by conveniently sidestepping the significance of several key issues that should be brought to the Court's attention prior to the hearing.

I.  **The Applicable Standard**

First, the government correctly points out that the applicable standard is "good cause" under Rule 55(c). The government, however, fails to mention that the "good cause" standard is a relatively "liberal one," meaning that the "threshold for Rule 55(c) relief is lower, ergo more easily overcome, than that which obtains under Rule 60(b)." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir.1989) (court set aside entry of default since party showed "good cause"). The balance of equities itself, then, tends to tip in the defendant's favor as long as a district court does not err by applying the standard "too grudgingly." Coon, 867 F.2d at 76. Moreover, "allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the

1

philosophy that actions should ordinarily be resolved on their merits . . . and with the command that the Civil rules "shall be construed to secure the just . . . determination of every action." Id. at 76 (citations omitted).

**II.     The Meritorious Defense Factor**

Second, as to the meritorious defense factor, the government boldly asserts that it has "extremely strong evidence that the Defendant Property was used to facilitate Kurt Walter's drug trafficking." United States' Opposition to Kurt Walter's Motion for Leave to File a Late Claim at 11 (hereinafter "United States' Opposition"). In truth, the evidence is sorely lacking in establishing a connection between the Defendant Property and any alleged drug trafficking. The evidence primarily consists of an affidavit of an FBI agent involved in the investigation. Affidavit of Agent Brian Tomasetta, attached as Exhibit A to Verified Complaint for Forfeiture *in Rem* (hereinafter "Tomasetta Aff."). This affidavit refers to vague and cryptic statements made during telephone conversations recorded via wire-tap; these statements fail to indicate clearly whether drug trafficking ever occurred in connection with the Defendant Property. The affidavit further references a closet at the Defendant Property that contained firearms. Mr. Walter denies that these firearms constitute evidence of drug trafficking. Indeed, there is evidence that establishes the firearms were licensed to and collected by Mr. Walter's deceased father who was a Boston special police officer and worked as a court officer.

The affidavit's allegation that Mr. Walter engaged in a drug transaction in connection with the Defendant Property on August 17, 2003 is based on mere suspicion. At no time did government agents actually see any money or any drugs exchanged. The agent concludes that a drug transaction occurred based on little more that Walter's statement to John McCarthy the day

2

before that he "should be ready to rock tomorrow." (Tomasetta Aff. ¶ 18). In contrast to many drug cases, the government has no evidence of having conducted a controlled purchase of any drugs via an informant or an undercover agent. Cf. United States v. Reddrick, 90 F.3d 1276, 1280- 81 (7th Cir.1996) (finding that although confidential informant's information alone could not support probable cause determination, added testimony of controlled buys did). Nor is there any evidence that any of the substances found in the search were determined to be drugs, rather than merely suspected of being drugs. Cf. United States v. 5 Bell Rock Road, 896 F.2d 605, 607 (1st Cir.1990) (police lab report showing that "dried vegetation" found in search was marijuana).

Thus, Mr. Walter certainly has a meritorious defense as demonstrated by a close look at the agent's affidavit. United States v. Parcel of Land and Residence at 28 Emery Street, Merrimac, Mass., 914 F.2d 1, 5-6 (1st Cir.1990) (holding that informant's testimony, telephone calls with vague references to a drug deal, and seized drug paraphernalia did not establish enough evidence to support summary judgment for the government in forfeiture action). As further evidence in his defense, Mr. Walter intends to introduce the transcript of the cross-examination of Agent Tomasetta from the detention hearing.

### III. The Authority of the Executrix to File a Claim Covering Kurt Walter's Interest

Third, it is well-settled that the personal representative of the estate[1] has standing to contest a forfeiture action, standing in the shoes of the decedent as if she were a party to the litigation. United States v. Real Property, Buildings, Appurtenances and Improvements Located at 221 Dana Ave., Hyde Park, Massachusetts, 81 F.Supp.2d 182 (D.Mass.2000), reversed on other grounds, United States v. Real Property, Buildings, Appurtenances and Improvements at

---

[1] The term "personal representative of the estate" means executors or administrators. Nile v. Nile, 734 N.E.2d 1153, 1158 (2000).

3

221 Dana Avenue, Hyde Park, Massachusetts, 261 F.3d 65 (1st Cir.2001) ("As executrix of Mr. Gass's estate, Mrs. Gass has standing to contest the forfeiture on Mr. Gass's behalf, and stands in the shoes of Mr. Gass as if he were a party to the litigation."), citing United States v. 40 Clark Rd., 52 F.Supp.2d 254, 257 (D.Mass.1999) (claimant filed "as Executrix of the Estate"); United States v. 5854 N. Kenmore, 762 F.Supp. 204, 207-08 (N.D.Ill.1991) ("the court agrees that Ms. Birgel has standing to challenge this action as a personal representative of Birgel's estate."); United States v. Miscellaneous Jewelry, 667 F.Supp. 232, 236 (D.Md.1987) (claimant was acting as the personal representative of . . . estate [and therefore had] the authority to maintain an action standing the in the shoes of the decedent.).

Mr. Walter understood that as executrix of the estate, Melissa Walter, would stand in the shoes of her deceased mother as if she were a party to the litigation and oppose the forfeiture as to the entire estate and its beneficiaries. Surely, if Ms. Doris Walter was alive and a party to this action she would not have forfeited half of her interest in the Defendant Property. Rather Doris Walter would have challenged the government's forfeiture by protecting all of the property interests at stake. Mr. Walter understood that the executrix, as his fiduciary, would so too proceed. Bearse v. Styler, 309 Mass. 288, 34 N.E.2d 672 (1941) ("The executors were fiduciaries, bound to administer the estate in accordance with the law [and their appointments] were commissions by virtue of which they were empowered to administer lawfully and faithfully a private trust, with the single purpose of protecting and furthering the interests of the beneficiaries.").

Thus, the government relies on Mr. Krupp's statements ("As you know, Bill Cintolo is representing Kurt Walter. Bill told me yesterday that Kurt will not be asserting an interest in the property at 25 Royal Road.") by accepting those statements as presented out of context by Mr.

Krupp. The government conveniently ignores the other side of the understanding, which was that Mr. Walter understood that the executrix would assert a claim on behalf of the estate, standing in the shoes of the decedent, Doris Walter, and thereby would protect his interests. Given that the law is clear that the executrix had the power to do so, and that Mr. Krupp gave assurances that the executrix would file a claim on behalf of the entire estate, Mr. Walter had reasonable justification for not filing a claim apart from the executrix's claim.

The government counters that the estate had no rights to assert in the real property since title had passed at the probate of the will.[2] In relying on the title rule alone, the government conveniently sidesteps another key issue ---the executor still has the power to protect the estate's interests under the will.[3] The will gives the executrix extensive powers with respect to the property related to the estate, both *real* and personal. The relevant portion is as follows:

> By way of illustration and not of limitation and in addition to any inherent, implied or statutory powers granted to executors generally, my Executor is specifically authorized and empowered with respect to any property, *real* or personal. At any time held under any provision, of this my will: to allot, allocate between principle and income, assign, borrow, buy, care for, collect, compromise claims, contract with respect to, continue any business of mine, convey, convert, deal with, dispose of, enter into, exchange, hold, improve, incorporate any business of mine, invest, lease, manage, mortgage, grant and exercise options with respect to, take possession of, pledge, receive, release repair, sell, sue for, to make distributions of divisions in cash or in kind or partly in each without regard to the income tax basis of such asset *and in general, to exercise all of the powers in the management of my Estate which any individual could exercise in the management of similar property owned in its own right, upon such terms and conditions as to my Executor may seem best,* sell or purchase bonds, stocks and other securities, sell purchase, or own part interest in real and or personal property, and execute and deliver any and all instruments and to do all acts which my Executor may deem proper or necessary to carry out the purposes of this my Will, without being limited in any way by the specific grants of power made, and without the necessity of a court order. Article

---

[2] The fact that the government admits to dealing with Melissa *qua* executrix and with her general estate counsel, William Abendroth, suggests that the government itself had some reason to consider that the estate held interests in the Defendant Property.

[3] In addition, Ms. Walter, as executrix, could have maintained an action on behalf of the estate and its beneficiaries based on implied statutory powers. See M.G.L. c. 230, §§ 1, 5.

VIII of Last Will and Testament of Doris M. Walter (attached to Affidavit of William Cintolo, Ex. A) (emphasis added).

While technically Mr. Walter held title to 50% of the Defendant Property, given this thick bundle of rights that the executor has over the estate property, Mr. Walter was reasonable in assuming those rights included an implied power to maintain an action in opposition to the government in this forfeiture action, especially in light of the specific reference to the executrix's power over real property and the catch-all clause in Article VIII as emphasized above; thus, Mr. Walter was reasonable in relying on the executrix to exercise those expansive powers in contesting the government's forfeiture action as to the entire property.

Also, at the time the government filed the forfeiture action, the Defendant Property was under a purchase and sale agreement. This fact added to the facts that the executrix held all the above rights in the property and that the purchase and sale was in effect, and that the executrix had been handling all issues with respect to the estate property, Mr. Walter had good cause to think that the executrix would handle this civil forfeiture action against the property. Conversely, it was unreasonable for the government to rely on the representations of counsel who have no authority to speak for Mr. Walter in assuming that Mr. Walter would forego the opportunity to file a rightful claim to property amounting to over one third of a million dollars.

Supporting this line of argument is a case that bears a close relationship to the facts of the instant case; the case is United States v. One Parcel of Real Property With Bldgs., Appurtenances, and Improvements, Known as 147 Div. Street, Located in City of Woonsocket, R.I. 682 F.Supp. 694 (D.R.I.1988). There, the court entered a default against the claimant when the claimant failed to respond to the government's motion to strike his claim for failure to comply with Rule C(6). Id. at 696-98. The claimant argued that he did not respond because he

believed that the government's position was that a prior transfer was valid and that as a result the claimant no longer had an interest in the property. Id. The court in setting aside the default observed that there was good reason for the default as "the dilemma in which [the claimant] now finds himself is the result of an understandable confusion concerning the nature of his interest in the property at the time forfeiture proceedings were instituted." Id. at 697

Here, Mr. Walter is in a similar dilemma as the nature of his interest in the property at the time the forfeiture proceedings were instituted was understandably complex given that the executrix of the estate continued to exercise her powers under the will, was managing the Defendant Property, and that the Defendant Property was under a purchase and sale agreement at the time, which purchase and sale was part of a real estate transaction that Mr. Walter was not a party to, nor need he have been a party to.[4] Therefore, as the court in One Parcel did, this court should set aside the default. See 682 F.Supp at 696-98.

## IV.   The Alleged Prejudice to the Government

As a final note, the government's prejudice argument is a product of unpersuasive reaching. The government seems to be arguing that it is prejudiced because it relied on the representations of a lawyer who had no authority to speak for Mr. Walter in assuming that Mr. Walter would not assert a claim; furthermore the government assented to an interlocutory sale[5] below appraisal value based on this assumption. Thus, the government it seems would be prejudiced by the setting aside of the default since it forewent the potential opportunity to recover more property in the forfeiture action. This argument is unpersuasive because, as the

---

[4] The purchase and sale, attached as Exhibit A to the joint motion for interlocutory sale, was signed by Melissa Walter as "Executrix of the will of Doris M. Walter, and not individually."
[5] Interlocutory sales, by definition, are provisional and thus may be set aside. United States v. Esposito, 970 F.2d 1156 (2nd Cir.1992) (order authorizing interlocutory sale held not justified and vacated). So assuming, arguendo, that the government is prejudiced by the interlocutory sale, such prejudice is not self-evidently permanent.

government implicitly admits, Melissa Walter and Kurt Walter for that matter suffer an equal prejudice by the sale below appraisal value.[6] United States' Opposition at 10 fn. 4. All parties stand to receive less as a result of the interlocutory sale (except the buyers of course), not just the government; this type of generalized prejudice is not the type of prejudice courts seek to avoid in refusing to set aside an entry of default. Coon, 867 F.2d at 77 (court set aside entry of default relying on the fact that non-defaulting party could not show "that witnesses have died, that memories have dimmed beyond refreshment, that some discovery scheme has been thwarted, or that evidence has been lost.")

WHEREFORE, for the reasons set forth above, Mr. Walter requests the Court to grant his Motion for Leave to File a Late Claim on the Defendant Property.

> Respectfully submitted,
> Kurt Walter
> By his attorneys
>
> William Cintolo (BBO# 984120)
> Nicholas A. Kenney (BBO# 650784)
> COSGROVE, EISENBERG & KILEY, P.C.
> One International Place, Suite 1820
> Boston, MA 02110
> 617.439.7775
> 617.330.8774 (fax)

Dated: April 20, 2004

---

[6] The allegation that the sale below appraisal value was due to the presence of firearms in the house or because of Mr. Walter's alleged crimes has no supporting evidence.

CERTIFICATE OF SERVICE

I, Nicholas A. Kenney, hereby certify that the foregoing Memorandum in Reply to the Government's Opposition to Kurt Walter's Motion for Leave to File a Late Claim and accompanying affidavit were served upon the following individuals by first class mail, postage prepaid:

AUSA Jennifer H. Zacks
Office of the United States Attorney
One Courthouse Way
Boston, MA 02210

Valerie S. Carter, Esq.
Carter & Doyle, LLP
Russia Wharf West
530 Atlantic Avenue, 3rd Floor
Boston, MA 02210

Peter B. Krupp, Esq.
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109

Paul W. Eysie
853 Washington Street
Norwood, MA 02062

Steven T. Byer
1443 Beacon Street
Brookline, MA 02446

Date: April 30, 2004

_____
Nicholas A. Kenney

**Rule 7.1 Certification**

Pursuant to F.R.C.P. Local Rule 7.1(A)(2) I, Nicholas Kenney, hereby certify that I have conferred and attempted in good faith to resolve or narrow the issue raised in the foregoing motion.

4/30/2004
Date

_____
Nicholas A. Kenney

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$722,767.41 AS SUBSTITUTE <u>RES</u><br>FOR 25 ROYAL ROAD, BROOKLINE, MA,<br>Defendant. | )<br>)<br>) Civil Action No.<br>) 04-10191-DPW<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF WILLIAM CINTOLO

I, William Cintolo, hereby depose and state as follows:

1. I am counsel for Kurt Walter, the claimant in the above-captioned *in rem* action. I am also counsel for Kurt Walter in the criminal case underlying this *in rem* action.

2. On information and belief, the real property located at 25 Royal Road, Brookline, MA (the "Defendant Property") was owned by Kurt Walter's mother, Doris M. Walter, who lived there until her death on May 16, 2003. On information and belief, the Last Will and Testament of Doris M. Walter attached as Exhibit A to this affidavit is a true and accurate copy of that document.

Signed under penalties of perjury on the 30th day of April, 2004.

William Cintolo

1