

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 12, 2006

VIA CERTIFIED MAIL: 7005 2570 0001 8706 0103
RETURN RECEIPT REQUESTED

Attorney Peter B. Krupp
Lurie and Krupp, LLP
One McKinley Square
Boston, MA 02109

Re: <u>United States of America v. 25 Royal Road, Brookline, MA Civil Action 04-10191</u>

Dear Attorney Krupp:

Enclosed please find the United States' first set of interrogatories for Melissa Walter. Please note, the responses are due by May 12, 2006. If you have any questions or concerns, please do not hesitate to contact me at 617-748-3109. Thank you.

Sincerely,

Jennifer H. Zacks
Assistant U.S. Attorney

Enclosures (1)

JHZ/nes

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>25 ROYAL ROAD, BROOKLINE<br>MASSACHUSETTS<br>Defendant.<br><br>KURT WALTER<br>MELISSA WALTER<br>Claimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-10191-DPW |

### UNITED STATES' FIRST SET OF INTERROGATORIES PROPOUNDED TO CLAIMANTS AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

The United States of America, pursuant to Supplemental Rule for Certain Admiralty and Maritime Claims C(6), Federal Rules of Civil Procedure 26 and 33, and Local Rules 26.5 and 33.1, hereby requests that claimant Melissa Walter respond to the following Interrogatories fully, separately, in writing, under oath, under the penalty of perjury and in accordance with the following definitions and instructions by May 12, 2006.

### INSTRUCTIONS

A.  These Interrogatories must be answered separately, fully, in writing, and under oath.

B.  Your attention is drawn to Federal Rule of Civil Procedure 26(e) for a statement of the duty to supplement your responses to these Interrogatories.  These Interrogatories shall be deemed continuing, so as to require additional answers if you obtain

further information between the time these Interrogatories are served and the time of trial of this action.

C.  If you cannot answer any interrogatory in full, after exercising due diligence to secure the information to do so, answer the interrogatory to the extent possible, explain any inability to answer, and state the information presently available to you concerning the unanswered portion.

D.  If you elect to produce any document in response to one or more of the interrogatories, indicate to which interrogatory or part thereof the document responds.

E.  Each interrogatory should be construed to make the interrogatory inclusive rather than exclusive.  Thus, words importing the singular shall include the plural, words importing the feminine gender may be applied to males.  "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory inclusive.  "Any" shall be construed as "any and all" as necessary to make the interrogatory inclusive.

F.  If you object to any interrogatory, or any subpart thereof, state the legal and factual basis for your objection, and describe the information or documents that you propose to withhold as a result of your alleged objection.

G.  If you refuse to disclose information requested by any interrogatory, or any subpart thereof, on the basis of some privilege, please respond to the extent that the privilege is not applicable and identify the nature of the privilege that is being

claimed.  If the privilege is being asserted in connection with a claim or defense governed by state law, please indicate the particular privilege rule that is being invoked.  In addition, please identify: (a) with respect to each oral communication (I) the general topic of the communication (without stating the substance); (ii) the parties to the communication, (iii) other persons present during any part of the communication, (iv) the date(s) of the communication, (v) the place(s) of the communication, (vi) whether any tape or memoranda was prepared concerning any part of the communication, and (vii) if so, the present location and custodian of such tape or memoranda; and (b) with regard to each written communication (I) the general topic of the communication (without setting forth the contents), (ii) a description of the written document, (iii) the author of the document, (iv) the date of the document, (v) the letterhead of the document, (vi) the names of all persons whose names or signatures appears in or on the document, (vii) the names and addresses of any and all addressees and/or recipients of the document, and (viii) the present location and custodian of each such document.

**DEFINITIONS**

The United States incorporates all the definitions as set forth in Local Rule 26.5.  In addition, the following definitions apply:

A.  "You," "your" and "yours" shall mean Melissa.

B.   "Defendant Property" and "Property" shall mean 25 Royal Road, Brookline, Massachusetts.

C. "Identify," "identity" and "state the identity of," when used in reference to:

(1) "Document" shall mean to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term;

(2) "Communication" shall mean the transmittal of information in all forms whether written, oral or electronic, including the date, time, place, and participants (in the form, facts, ideas, inquiries, or otherwise);

(3) "Source" shall mean to state each of (1) and/or (2) above that refers to the topic being inquired about; and

(4) "Person" shall mean to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be listed in response to subsequent discovery requesting the identification of that person.

D.   "Describe" shall mean characterize or delineate with particularity, _i.e._, set forth those material facts and details that are reasonably necessary to an intelligible and meaningful

understanding of the person, place, main idea, activity, or transaction being described.

E. "Association" shall mean all forms of business or personal relationships with another person or entity and the length of the association.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Provide the following information: your full name, date of birth, place of birth, social security number, current address(es), telephone number(s), length of time at current residential address, any previous name or alias used, the time period during which any such previous name or alias was used, all addresses at which you have lived during the past ten years, including length of time at each address and specifying during which years and months you lived at each address.

**INTERROGATORY NO. 2:** Provide the following information: your present employment and prior employment for the past five years, indicating the following:

(a) The names, addresses, and telephone numbers of each employer or place of business, including the dates (months and years) during which you worked there;

(b) How many hours you worked, on average, per week in each position listed;

(c) The names, addresses, and telephone numbers of your supervisors; and

(d) The nature of the work you performed.

**INTERROGATORY NO. 3:**  Identify any other sources and amounts of income that you had for the years 2000-2005, listing separately for the years 2000, 2001, 2002, 2003, 2004 and 2005 your annual income from all sources and the sources of such income.

**INTERROGATORY NO. 4:**  Identify each and every witness or other person with knowledge or information concerning the events which are alleged in the Civil Complaint.

**INTERROGATORY NO. 5:**  From 2000 to the present, on average, how many hours per week/month did you speak and or visit with Kurt Walter?

**INTERROGATORY NO. 6:**  Describe with specificity when and how you learned of Kurt Walter's drug use and/or drug distribution and describe all conversations you had with others regarding Kurt Walter's drug use and/or drug distribution, including the dates, participants and substance of such conversations.

**INTERROGATORY NO. 7:**  Describe Kurt Walter's sources of income during the years 2000-2005, including the following:

    (a)  The names, addresses, and telephone numbers of each employer or place of business, including the dates during which Kurt Walter worked there;

    (b)  How many hours Kurt Walter worked, in average, per week, and salary;

    (c)  The nature of the work performed;

    (d) Any sources of income other than those listed above.

**INTERROGATORY NO. 8:**  From 1999-2005, list all the people, who resided at any time at the Defendant Property and the time periods, in months and years, that they resided there.

**INTERROGATORY NO. 9:** From 1999-2005, how often did you visit, and during what period, if any did you reside at, the Defendant Property?  Describe the purpose and duration of such visits and describe which areas of the Defendant Property you had access to.

**INTERROGATORY NO. 10:**  Did you know any of Kurt Walter's drug customers?  If so, list their names, describe under what circumstances you met them, how frequently you communicated with them, and how you knew them to be drug customers of Kurt Walter.

**INTERROGATORY NO. 11:**  List all occasions on which you were aware of  drugs, drug proceeds, or drug paraphernalia (including such items as scales or firearms) being present at the Defendant Property.  Include descriptions of the types of drugs and/or paraphernalia, the amounts of drugs or money, and describe how you learned of their presence.

**INTERROGATORY NO. 12:**  Describe with specificity the legal and factual basis for the following statement from your answer:

    (a)  "...(I) did not know of the conduct giving rise to forfeiture"

**INTERROGATORY NO. 13:** Describe all conversations with Kurt Walter or with any other person regarding the use of the Defendant Property for drugs, drug proceeds, and weapons, including who was

present, what was said, when the conversations occurred, and under what circumstances the conversations occurred.

**INTERROGATORY NO. 14:**  Describe with specificity any actions, including the dates of such actions, that you have taken to prevent Defendant Property from being used to facilitate illegal drug activities.

### REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 26.5 of the United States District Court, District of Massachusetts Local Rules, the United States of America, by its attorney, Michael J. Sullivan, hereby requests that the claimant, Melissa Walter, produce the following items, records and documents listed below for inspection and copying at the office of the United States Attorney, District of Massachusetts, United States Courthouse, Suite 9200, One Courthouse Way, Boston, Massachusetts 02210, within thirty (30) days of your receipt of this Request For Production.  This Request For Production may be complied with by forwarding copies of the same to the above-referenced address, to the attention of Jennifer H. Zacks, Assistant United States Attorney, within thirty (30) days of your receipt of this request:

**DOCUMENT REQUEST NO. 1:**

All documents used to provide information for your answers to the United States' First Set of Interrogatories.

**DOCUMENT REQUEST NO. 2:** All documents relating to your acquisition of an interest in the Defendant Property and the sale of the Defendant Property.

**DOCUMENT REQUEST NO. 3:** All documents relating to communications to or from Kurt Walter regarding the Defendant Property.

The United States incorporates all the definitions and instructions set forth in Local Rule 26.5 and within the United States' First Set of Interrogatories Propounded to Melissa Walter.

MICHAEL J. SULLIVAN
United States Attorney

By:_____

JENNIFER H. ZACKS
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02110
(617) 748-3100

Date: April 11, 2006

# LURIE & KRUPP, LLP

ONE MCKINLEY SQUARE
BOSTON, MA 02109

PETER B. KRUPP
DAVID E. LURIE

KAREN E. FRIEDMAN
SARA A. LAROCHE
THOMAS E. LENT

TEL: (617) 367-1970
FAX: (617) 367-1971

E-MAIL: pkrupp@luriekrupp.com

May 30, 2006

<u>By Hand</u>

Jennifer H. Zacks
U.S. Attorney's Office
J. Joseph Moakley United States Courthouse
1 Courthouse Way, 9th Floor
Boston, MA 02210

Re:    <u>United States v. 25 Royal Road, Brookline, Massachusetts,</u>
U.S.D.C. (Mass.) Civil Action No. 04-10191-DPW

Dear Jennifer,

Enclosed please find the Answers and Objections of Melissa Walter to Plaintiff's First
Set of Interrogatories.

Please call me if you have any questions about the enclosed.

Very truly yours,

Peter B. Krupp

PBK:kag

Enclosure

cc:    Melissa Walter (w/o enc.)
William J. Cintolo (w/enc.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-10191-DPW |
| $722,767.41 AS SUBSTITUTE RES FOR<br>25 ROYAL ROAD, BROOKLINE, MA,<br>            Defendant. | ) ) ) ) | |

## ANSWERS AND OBJECTIONS OF MELISSA WALTER
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33 and Rule C(6) of the Supplemental Rules for

Certain Admiralty and Maritime Claims, claimant Melissa Walter ("Ms. Walter") hereby

answers the United States' First Set of Interrogatories to Claimants as follows:

### General Objections

1.    Ms. Walter objects to the interrogatories to the extent they seek

information protected by any applicable privilege, including the attorney-client privilege

and/or the work product doctrine.

2.    Ms. Walter objects to the interrogatories to the extent that they seek to

impose any obligations on Ms. Walter beyond those required under the Federal Rules of

Civil Procedure.

3.    Ms. Walter objects to the interrogatories to the extent that they are vague

as to timeframe.

4.    Ms. Walter objects to the interrogatories to the extent they seek personal

financial information about Ms. Walter.  The interrogatories appear in certain respects to

be stock, boilerplate interrogatories used by the forfeiture unit, not carefully tailored to the facts of the particular case. This is not a situation where the government alleges that the asset it seeks to seize was procured with the proceeds of illegal conduct, or that the proceeds of illegal conduct were invested in the property in questions. Accordingly, personal financial information about Ms. Walter, or for that matter any other person, is irrelevant to the issues in this case.

<u>Answers to Specific Interrogatories</u>

<u>INTERROGATORY NO. 1</u>: Provide the following information: your full name, date of birth, place of birth, social security number, current address(es), telephone number(s), length of time at current residential address, any previous name or alias used, the time period during which any such previous name or alias was used, all addresses at which you have lived during the past ten years, including length of time at each address and specifying during which years and months you lived at each address.

 <u>ANSWER NO. 1</u>: Ms. Walter objects to this interrogatory because it is overbroad and unduly burdensome. Subject to these objections and the General Objections above, Ms. Walter states as follows:

 Melissa Walter; DOB: 12-23-60; POB: Newton, Massachusetts; SS # 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; current address: 292 Hillside Street, Milton, Massachusetts; home tel: 617-696-7119; current cellular tel: 617-797-7119. Ms. Walter has not used any aliases.

 Ms. Walter has lived at her current address since January 9, 1998. From November 1, 1997 through January 9, 1998, she lived at 25 Royal Road, Brookline, Massachusetts. In September and October of 1997, Ms. Walter lived at 261 Commonwealth Avenue, Boston, Massachusetts. Prior to that, Ms. Walter lived in New Jersey.

2

INTERROGATORY NO. 2: Provide the following information: your present employment and prior employment for the past five years, indicating the following:

     a.     The names, addresses and telephone numbers of each employer or place of business, including the dates (months and years) during which you worked there;

     b.     How many hours you worked, on average, per week in each position listed;

     c.     The names, addresses, and telephone numbers of your supervisors; and

     d.     The nature of the work you performed.

ANSWER NO. 2: Ms. Walter objects to this interrogatory because it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Objections above, Ms. Walter states as follows:

Since October 31, 2005, Ms. Walter has been employed by Office Resources, Inc., 374 Congress Street, Boston, Massachusetts (tel: 617-423-9100), as a senior account manager, working approximately 32 hours per week. Prior to this position, Ms. Walter worked for Showroom Collezione, 240 Stuart Street, Boston, Massachusetts (tel: 617-482-4805) for about a year doing furniture sales and working approximately 40 hours per week. Before that position, and back for the duration of the last five years, Ms. Walter worked at Office Resources, Inc., 374 Congress Street, Boston, Massachusetts (tel: 617-423-9100), working 32-40 hours per week as a senior account manager.

INTERROGATORY NO. 3: Identify any other sources and amounts of income that you had for the years 2000-2005, listing separately for the years 2000, 2001, 2002, 2003, 2004 and 2005 your annual income from all sources and the sources of such income.

ANSWER NO. 3:  In addition to the General Objections above, Ms. Walter objects to this interrogatory because it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 4:  Identify each and every witness or other person with knowledge or information concerning the events which are alleged in the Civil Complaint.

ANSWER NO. 4:  Ms. Walter objects to this interrogatory because it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Objections above, Ms. Walter states that the following people may have relevant information:  Kurt Walter, Melissa Walter, Jean Walter, Gerald Gee, Matthew Mintzer, Karen Fallon, Kay Harrison, William Abendroth, Steve Byer, Paul Eysie, Karen McLoughlin, Michael McLoughlin and Kim Frank.

INTERROGATORY NO. 5:  From 2000 to the present, on average, how many hours per week/month did you speak and or visit with Kurt Walter?

ANSWER NO. 5:  Ms. Walter objects to this interrogatory because it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Objections above, Ms. Walter states as follows:

In 2000 and 2001, Ms. Walter generally spoke to her brother, Kurt Walter ("Kurt"), approximately once every couple of months over the phone.  Ms. Walter does not believe she visited his home during this period.  Ms. Walter believes she spoke to Kurt a little more frequently in August and September 2001, because their brother Sam was diagnosed with lung cancer in August 2001.  From January 2002, when Ms. Walter

4

was diagnosed with early-stage breast cancer, through April 2002, when Ms. Walter finished receiving radiation treatments, Ms. Walter spoke to Kurt approximately two or three times a month.  Ms. Walter does not believe she visited Kurt's home during this period.  In early 2003, Ms. Walter generally spoke to Kurt approximately two or three times a week because her brother, Sam, became very ill.  When their mother was diagnosed with lung cancer in late March 2003, Ms. Walter spoke to Kurt a few times a day.  From then until their mother's death in May 2003, Ms. Walter and Kurt spoke almost daily.  After their mother's funeral, Ms. Walter does not believe that she spoke to Kurt for a month. From June 2003 through the time of Kurt's arrest, Ms. Walter called Kurt on the phone a few times per week (many times only reaching voice mail).  Ms. Walter visited Kurt's home after Kurt's arrest to get clothes for his son.

In 2004, Ms. Walter spoke to Kurt generally once or twice a month, and somewhat more frequently when he was incarcerated.  In 2005, Ms. Walter spoke to Kurt approximately two or three times per month.

INTERROGATORY NO. 6:  Describe with specificity when and how you learned of Kurt Walter's drug use and/or drug distribution and describe all conversations you had with others regarding Kurt Walter's drug use and/or drug distribution, including the dates, participants and substance of such conversations.

ANSWER NO. 6:  Ms. Walter objects to this interrogatory because the phrase "Kurt Walter's drug use and/or distribution" is vague and ambiguous and because this interrogatory is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Objections above, Ms. Walter states as follows:

Kurt has had a substance abuse problem since he was in high school. When Ms.

Walter returned to Boston in 1997, she discussed it with her family. At this time, Kurt

was an adult and was responsible for himself.

INTERROGATORY NO. 7: Describe Kurt Walter's sources of income during the years
2000-2005, including the following:

a.      The names, addresses, and telephone numbers of each employer or place
        of business, including the dates during which Kurt Walter worked there;

b.      How many hours Kurt Walter worked, in average, per week, and salary;

c.      The nature of the work performed;

d.      Any sources of income other than those listed above.

ANSWER NO. 7: Ms. Walter objects to this interrogatory because it is

overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence. Subject to these objections and the General Objections above, Ms.

Walter states that she does not know Kurt's sources of income, although Ms. Walter's

mother told Ms. Walter at various times that Kurt was selling carpets, selling baseball

memorabilia, and working in a restaurant in which he had an ownership interest.

INTERROGATORY NO. 8: From 1999-2005, list all people, who resided at any time at
the Defendant Property and the time periods, in months and years, that they resided there.

ANSWER NO. 8: Ms. Walter objects to this interrogatory because the phrase

"resided at any time at" is vague and ambiguous and because this interrogatory is

overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence. Subject to these objections and the General Objections above, Ms.

Walter states that Doris M. Walter, Ms. Walter's mother, lived at the property from 1999

until her death in May 2003. The house was sold in March 2004. Neither Kurt nor Ms.

Walter lived at the property during this period.

INTERROGATORY NO. 9: From 1999-2005, how often did you visit, and during what period, if any did you reside at, the Defendant Property? Describe the purpose and duration of such visits and describe which areas of the Defendant Property you had access to.

ANSWER NO. 9: Ms. Walter objects to this interrogatory because it is

overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence. Subject to these objections and the General Objections above, Ms.

Walter states that from 1999 until late March 2003, Ms. Walter went to the property once

or twice a month for a couple of hours, to visit her mother, to have dinner or to watch a

movie. Although Ms. Walter had access to the entire house on these visits, she would

principally visit in the kitchen and the den.

From April through May 2003, Ms. Walter visited daily while her mother was

home (that is, when she was not in the hospital) to check on her mother's health, and to

give comfort and support. The duration of these visits varied from an hour to the entire

day. After Doris Walter's funeral on May 19, 2003, Ms. Walter does not believe she

went back to the house until June 12, 2003. From the middle of June 2003 through

March, 2004, Ms. Walter went to the house once or twice a week to clean it out, shovel

snow, put out trash, and meet real estate brokers, contractors and the fire department

officials. After September 2003, another purpose for Ms. Walter visiting the property

was to make sure Kurt was not using the property for any improper purpose. During

these visits in the last half of 2003 and early 2004, Ms. Walter had access to the entire

house.

7

Ms. Walter did not visit the property during the rest of 2004 or 2005.

Further answering, please see Ms. Walter's answers to Interrogatory Nos. 11 and

14.

INTERROGATORY NO. 10: Did you know any of Kurt Walter's drug customers? If so, list their names, describe under what circumstances you met them, how frequently you communicated with them, and how you knew them to be drug customers of Kurt Walter.

ANSWER NO. 10: Ms. Walter objects to this interrogatory because the phrase

"drug customers" is vague and ambiguous, and because this interrogatory is overbroad,

unduly burdensome and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to these objections and the General Objections above, Ms. Walter

states as follows:

(1) John McCarthey, a friend of Kurt's, who Ms. Walter has known from in or

about when Kurt was in high school. Mr. McCarthey also briefly worked at Office

Resources in 2001, overlapping with Ms. Walter. Ms. Walter does not believe she

communicated with Mr. McCarthey after he left Office Resources, other than to say hello

to him on the street. Ms. Walter read in the indictment that Mr. McCarthey was alleged

to be a customer of Kurt's.

(2) Jose Vezga, a friend of Kurt's since high school, who Ms. Walter met in or

about the late 1980s. Ms. Walter does not believe she communicated with Mr. Vezga

other than to say hello if they ran into one another. Ms. Walter read in the indictment that

Mr. Vezga was alleged to be a customer of Kurt's.

(3) John Graham, a recent friend of Kurt's. Ms. Walter met him a few years ago

at a birthday party for her mother, Doris Walter. Ms. Walter does not believe she

8

communicated with him after that birthday party.  Ms. Walter read in the indictment that

Mr. Graham was alleged to be a customer of Kurt's.

(4) Kim Frank, a friend of Ms. Walter's since high school.  Before the death of

Ms. Walter's mother, Ms. Walter would see Ms. Frank approximately once a month and

speak with her every couple of weeks.  After the death of Ms. Walter's mother, Ms.

Walter would see Ms. Frank approximately every few months, but still speak with her

every couple of weeks.  Ms. Walter learned that Ms. Frank was a drug customer of Kurt's

when Ms. Frank called Ms. Walter on July 12, 2005 and told Ms. Walter that the US

Attorney's Office had sent her a letter requesting information.

INTERROGATORY NO. 11:  List all occasions on which you were aware of drugs, drug
proceeds, or drug paraphernalia (including such items as scales or firearms) being present
at the Defendant Property.  Include descriptions of the types of drugs and/or
paraphernalia, the amounts of drugs or money, and describe how you learned of their
presence.

ANSWER NO. 11:  Ms. Walter objects to this interrogatory because the phrase

"drug paraphernalia" is vague and ambiguous, and because this interrogatory is

overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of

admissible evidence.  Subject to these objections and the General Objections above, Ms.

Walter states as follows:

On occasion when Ms. Walter would visit her mother, Ms. Walter would find the

ends of marijuana cigarettes in ashtrays and would sometimes see rolling papers.  After

the death of Ms. Walter's mother, Ms. Walter found a Ziploc bag in the basement by the

washing machine. She did not know if it contained marijuana, but she thought that it did.

She contacted Kurt and asked him to get rid of it.  Ms. Walter never saw it again.

9

On September 20, 2003, on her way back from an art show in Jamaica Plain, Ms. Walter stopped at the property to make sure the house was clean because the real estate broker was holding an open-house the following day. When she went into the basement, she found a small scale, a few dozen fingernail sized buds on the floor, rolling papers, liquor and beer bottles, and cigarette butts over flowing in the ashtrays. On the same day, Ms. Walter left a message for Kurt, and had a conversation with him on the next day, instructing him that there was to be no more hanging out or partying at the property because, among other reasons, the house was being actively marketed for sale. Ms. Walter then visited and checked the property regularly and saw no evidence of any improper use of the property by Kurt or others.

In or about September 2003, Ms. Walter saw two guns at the property. Ms. Walter's late father had been a court officer and the owner of a security company. Ms. Walter knew at one point that her father had owned guns. Ms. Walter did not know what happened to her father's guns, and thought that her mother may have turned them in to the police after his death. Ms. Walter's late brother Sam mentioned the guns to Ms. Walter after Ms. Walter's mother's death and while Ms. Walter was visiting Sam in the hospital. Sam asked Ms. Walter if Ms. Walter knew if there were still guns in the house. Ms. Walter believes that at some point she asked Kurt about their father's guns, and that he said that if there were any guns in the house they were licensed or had been at one time. In or about September 2003, Ms. Walter asked Kurt to move the guns that she saw to the basement because the real estate agent said that potential buyers were scared by them. Kurt later told Ms. Walter that he did so, but that they were only pellet guns.

Ms. Walter never saw any quantities of money at the property.

Further answering, please see Ms. Walter's answer to Interrogatory No. 9.

INTERROGATORY NO. 12: Describe with specificity the legal and factual basis for the following statement from your answer:

    a.    "…(I ) did not know of the conduct giving rise to forfeiture."

    ANSWER NO. 12: Ms. Walter objects to this interrogatory to the extent it calls

for the legal basis for a factual assertion in the Answer filed in this case, and because it is

overbroad and unduly burdensome. Subject to these objections and the General

Objections above, Ms. Walter states that she did not know that, and still does not know if,

the house was being used as a place out of which to deal, or in which to store, drugs or

drug paraphernalia for drug distribution. Ms. Walter believed that Kurt was using their

late mother's house as a place to hang out with his friends and to do his wash. Kurt lived

in a small apartment one block away.

INTERROGATORY NO. 13: Describe all conversations with Kurt Walter or with any other person regarding the use of the Defendant Property for drugs, drug proceeds, and weapons, including who was present, what was said, when the conversations occurred, and under what circumstances the conversations occurred.

    ANSWER NO. 13: Ms. Walter objects to this interrogatory because the phrase

"the use of the Defendant Property for drugs, drug proceeds, and weapons" is vague and

ambiguous, and because this interrogatory is overbroad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to these

objections and the General Objections above, Ms. Walter states as follows:

    Please see Ms. Walter's answer to Interrogatory No. 11.

INTERROGATORY NO. 14: Describe with specificity any actions, including the dates of such actions, that you have taken to prevent Defendant Property from being used to facilitate illegal drug activities.

ANSWER NO. 14:    Ms. Walter objects to this interrogatory because the phrase "facilitate illegal drug activities" is vague and ambiguous, and because this interrogatory is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections and the General Objections above, Ms. Walter states that she did not know the property was being used to facilitate the conduct giving rise to the allegations underlying this forfeiture action.  When Ms. Walter found drug paraphernalia at the house, she told Kurt to remove it immediately, which, to Ms. Walter knowledge at the time, he did.

Further answering, please see Ms. Walter's answers to Interrogatory Nos. 9 and 11.

Signed subject to the pains of perjury this 30th day of May, 2006.

Melissa Walter

As to objections:

Peter B. Krupp
B.B.O. #548112
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
Tel.  617-367-1970

## CERTIFICATE OF SERVICE

I, Peter B. Krupp, hereby certify that this document was served by hand delivery on Assistant U.S. Attorney Jennifer H. Zacks on May 30, 2006.

Peter B. Krupp

12