```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )
            Plaintiff,        )
                              )
     v.                       ) Civil Action No. 04-10191-DPW
                              )
25 ROYAL ROAD, BROOKLINE,     )
MASSACHUSETTS,                )
            Defendant.        )
_____)
KURT WALTER, and              )
MELISSA WALTER,               )
            Claimants.        )
```

**UNITED STATES' LOCAL RULE 56.1 STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF
<u>ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1, the United States respectfully submits this Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment.

<u>**THE PARTIES AND PROCEEDINGS**</u>

1. The defendant in the above-captioned case is the real property located at 25 Royal Road, Brookline, Massachusetts (the "Defendant Property"). <u>See</u> Verified Complaint for Forfeiture <u>In Rem</u> (the "Complaint"), Docket 1.

2. The Defendant Property is the subject of an <u>in rem</u> forfeiture action based on information gathered through wire interceptions, confidential informant information, and the execution of a search warrant and subsequent arrest of Kurt

Walter on December 2, 2003.  See Docket 1, Affidavit of Special Agent Brian Tomasetta (the "Tomasetta Affidavit").

3.   The Complaint, filed on January 27, 2004, seeks forfeiture of the Defendant Property pursuant to 21 U.S.C. § 881(a)(7) on the grounds that it constitutes "real property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846, and/or 856."  Docket 1, ¶ 4.

4.   On January 29, 2004, this Court found probable cause for forfeiture of the Defendant Property based on the Complaint, and issued the forfeiture Warrant and Monition, directing the United States Marshals Service to publish and serve the notice of forfeiture.  Docket 2.

5.   On February 20, 2004, Steven T. Byer and Paul W. Eysie filed a Notice of Claim as prospective purchasers of the Defendant Property.  Docket 3.

6.   On February 27, 2004, Melissa Walter filed an Answer and Verified Statement.  Dockets 6 & 7.

7.   On March 22, 2004, the parties moved jointly for an order of sale of the Defendant Property, which was granted the next day by the Court.  Dockets 18 & 21.

8.   The Defendant Property was sold to Byer and Eysie, disposing of their claim, and the proceeds of the sale of the

2

Defendant Property have been held in interest-bearing accounts pending the conclusion of this forfeiture action.  Docket 18.

9.  The government moved for default against the remaining other known owner of the Defendant Property, Kurt Walter, on March 23, 2004.  Docket 20.  The Court granted this motion on March 26, 2004, Docket 22, but subsequently allowed Kurt Walter's motion for leave to file a late claim.  Docket, 5/11/04.

10.  Kurt Walter filed a Verified Claim on June 9, 2004, an Answer on June 14, 2004, and an Amended Verified Claim on June 18, 2004.  Dockets 33, 32, & 34.

## FACTS

11.  The Defendant Property was owned by Doris M. Walter until her death on May 16, 2003.  Under Doris Walter's will, the Defendant Property passed in equal parts to her children, Melissa and Kurt Walter.  Docket 18, at ¶ 1.

12.  Kurt Walter ("Walter") distributed marijuana consistently over the past twenty years.  Transcript of Deposition of Kurt Walter, attached as Exhibit 1, at 32.

13.  From the year 2000 forward, Walter derived most of his income from the distribution of marijuana.  Ex. 1 at 34.

14.  By his own admission, Walter "constantly had a supply of marijuana."  Id.  He met with his customers "all over."  Id. at 60.  He met with them at bookstores, restaurants, Home Depot,

parking lots – "there was no set specific place." Id. at 61.

15. Walter made $30,000 per year from marijuana sales from 2000 through his arrest at the end of 2003. Id.

16. Between 2000 and his arrest at the end of 2003, Walter also smoked marijuana every day. Walter did not distinguish between the marijuana for his own use and that which was for distribution. Id. at 35.

17. Dan MacAuley ("MacAuley") was a marijuana customer of Walter's from 2000 through 2003. Id. at 37, 105.

18. MacAuley bought varying amounts of marijuana from Walter; he sometimes bought as little as a quarter pound (113.5 grams) and as much as five pounds at a time. Id. at 37-38.

19. Intercepted telephone calls between MacAuley and Walter show that MacAuley bought marijuana from Walter at the Defendant Property. Docket 1, Tomasetta Affidavit, ¶ 23; Cintolo Corr. at 6, referring to ¶¶ 84-131 (see Government's motion filed October 27, 2006 for definition of "Cintolo Corr.").

20. On August 19, 2003, there was a series of intercepted calls and voice mail messages between Walter and MacAuley indicating that they planned to meet that night. In one of these calls, MacAuley explained to Walter that he needed to see Walter that night, but that he didn't have the "paperwork" (money for marijuana). In another of these calls, Walter told MacAuley, "if

you've got a bag, bring it.  You got a duffel (bag), bring it." They agreed to meet the following morning.  Cintolo Corr. at 6, referring to ¶ 97.

21.  On August 19, 2003, there was a series of intercepted calls and voicemail messages between Walter and Daniel MacAuley indicating that they planned to meet that night.  In one of these calls, MacAuley explained to Walter that he needed to see Walter that night, but that he didn't have the "paperwork" (money for marijuana).  In another of these calls, Walter told MacAuley, "if you've got a bag, bring it.  You got a duffel (bag), bring it." They agreed to meet the following morning.  Id.

22.  On the following morning, August 20, 2003, a surveillance agent saw MacAuley and Walter together near the Chinese restaurant in Newton Center that Walter was working to renovate.  Walter took a black bag out of the truck that MacAuley had arrived in and brought the bag toward the restaurant.  Walter then took a cardboard box out of his BMW and gave it to MacAuley. MacAuley then drove away. The nature of this transaction, Walter providing MacAuley with marijuana on consignment, was confirmed by a call later in the day, when MacAuley reminded Walter about a loan that MacAuley had made to him in the past.  Walter assured MacAuley that neither of them would cheat the other, and that there was no need to worry.  This was a reference to MacAuley's

drug debt to Walter, based on the marijuana that Walter had given him.  The parties then discussed a future transaction.  MacAuley asked Walter if Walter would have "more" for MacAuley as soon as "he" (a customer) called MacAuley.  Walter agreed to give MacAuley "more in a couple of days, but call me as soon as he call(s) you back."  Id., referring to ¶ 98.

    23.  In a call on August 24, 2003, MacAuley reported to Walter that he "had loads of paperwork and [he was] ready to go" (meaning that he had money and was ready to get more marijuana from Walter).  Walter, apparently surprised by the speed with which MacAuley had sold the prior marijuana load, asked "again?"  MacAuley responded "it's bad out . . . it's bad out there" (i.e., it was difficult to get marijuana).  Walter told MacAuley that he had "only probably ten or fifteen for ya" (meaning that he only had a certain quantity of marijuana available for MacAuley), to hold him over for another week or two.  MacAuley corrected Walter and told him that this amount would only hold him for a week or so.  Id., referring to ¶ 99.

    24.  In another series of intercepted calls (September 12 to 15, 2003), Walter and MacAuley made arrangements to meet.  On September 15, 2003, Walter told him he could meet him that day, but people were showing the house (25 Royal Road, his late mother's home, which was on the market) so he wouldn't be able to

get in there until later.  MacAuley replied that he "didn't come prepared" (he did not have the drug proceeds to pay Walter). Walter told him not to worry about it and that they would figure it out the following day.  They agreed to meet at Walter's house. Soon thereafter, agents saw Walter park his car in front of 25 Royal Road, go inside, and come out after a few minutes.  Walter put an item in his trunk and then drove into the garage at his apartment building, 30 Gardner Road.  MacAuley later pulled up outside, went in, and came out less than twenty minutes later carrying a yellow plastic bag.  Id., referring to ¶ 101.

    25.  On September 23, 2003, Kurt Walter called Dan MacAuley. Walter and MacAuley discussed the last time they met in order to give Kurt Walter marijuana proceeds.  Walter asked MacAuley, "When was the last day you met me?"  "Was the last time you met me, right, to give me something, right, what was it?"  MacAuley could not remember, but replied, making reference to delivering marijuana proceeds to Walter, "It was a large one," and that it was at Walter's mother's house in the kitchen (25 Royal Road). Kurt Walter recalled that the day was "8/30."  Kurt Walter also stated, "that was a big one at my mom's" and that he did not see MacAuley again until "9/17."  Kurt Walter stated that he "has all those figures down."  They agreed to meet at 1:30 at the Dunkin' Donuts near Wollaston Boulevard.  Like the majority of the

intercepted telephone calls between Kurt Walter and his marijuana associates, in this call Kurt Walter and MacAuley used cryptic language to discuss their marijuana transactions.  In this conversation, Kurt Walter and MacAuley discussed the last time MacCauley met Walter to give him marijuana proceeds.  MacAuley's and Walter's references to "a large one" and "a big one" at Walter's mother's house refer to MacAuley giving Kurt Walter a large amount marijuana proceeds at Kurt Walter's mother's house (25 Royal Road) on August 30.  Tomasetta Affidavit, Docket Entry 1, ¶ 23.

    26.  In late October 2003, Walter and MacAuley met to do a deal before MacAuley then went on to sell some marijuana to one of his customers.  In two calls on October 20, 2003, Walter told MacAuley that he had more marijuana for him and they agreed to meet the following day.  A call on October 21, 2003 at approximately 3:45 pm indicated that MacAuley was traveling to meet Walter.  Surveillance agents saw Walter go to 25 Royal Road and enter the garage there; then, after a short time, Walter drove to the 30 Gardner Road residence and went into the garage.  MacAuley arrived in the area and entered 30 Gardner Road empty-handed.  About 15 minutes later, MacAuley emerged from the building with a medium to large sized cardboard box over his shoulder, got into his car, and left the area.  MacAuley was

followed to a Dunkin Donuts in Quincy where he met with an individual identified as Paul Roche. Roche entered MacAuley's vehicle empty-handed, but later exited the vehicle with a large object (covered by a jacket) under his arm. Cintolo Corr. at page 6, referring to ¶¶ 84-131.

27. On September 3, 2003, Kurt Walter called Francis Duggan, one of his marijuana distributors. During the conversation Kurt Walter indicated that he had to travel to a different location than his mother's house (25 Royal Road) to get marijuana for Duggan. Specifically, Kurt Walter told Duggan he had to "take a ride" because his "mom's house (25 Royal Road) is gone now. You know what I mean?" Duggan indicated that he understood. Kurt Walter further stated that he didn't have "the way I used to." Duggan asked Walter to do the best he could, but then said that he was "dying over here." "I've got nothing to smoke, nothing to sell. I'm in agony." Kurt Walter told Duggan to "Watch the phone." Based on information DEA learned through out its investigation, Kurt Walter and Duggan were discussing obtaining marijuana for Duggan. Kurt Walter's statement that his "mom's house is gone now," and that he didn't "have the way I used to," refers to how Kurt Walter was unable to use 25 Royal Road as a stash location for marijuana any longer because it is on the market for sale. Tomasetta Affidavit, Docket Entry 1,

¶ 22.

28.  On September 20, 2003, Melissa Walter left a voicemail message on Kurt Walter's phone, stating that she was "at Mum's," that is, 25 Royal Road.  Melissa Walter informed her brother, "Listen, we were going through the basement and we found all these little moist buds of pot.  So Kurt, you cannot have pot up here anymore.  You know because the realtor is gonna be coming through here a lot."  She concluded the call by saying "no more dope and no parties and no hanging out up he[re] anymore."  Id., ¶ 15.

29.  In a telephone conversation the following day, September 21, 2003, Melissa Walter reminded her brother that potential buyers would be visiting 25 Royal Road and told him to remove the evidence of narcotics trafficking.

> MELISSA:  I'm, you need to get that digital scale out of Mum's house okay.
>
> KURT:     Yeah
>
> MELISSA:  And you can't be doing that in the house.
>
> KURT:     Melissa that thing has been there for a while.
>
> MELISSA:  Well Kurt it was covered with weed. So I don't know how long a while is in your book, okay?
>
> KURT:     Yeah

      MELISSA:    And we wiped it off so.

      KURT:       Okay

      MELISSA:    You gotta get that out of there and there was just tons of buds all over the floor

      KURT:       Okay.

Id., ¶ 16.

30. Melissa Walter recalled having this conversation with Kurt Walter, and confirmed that she had located a scale with marijuana on it. She dusted off the scale and returned it to its original box and left it for Kurt Walter to pick up. Transcript of Deposition of Melissa Walter, attached as Exhibit 2, at 111-114.

31. Kurt Walter did not pick up the scale, and it was located by DEA in their search pursuant to warrant on December 2, 2003. A photograph of the scale is attached. DEA also found a duffel bag in the basement of 25 Royal Road containing a ziplock bag of 113.2 grams of marijuana. Cintolo Corr. at 6, referring to ¶ 79.

32. On September 29, 2003, during a controlled marijuana transaction with a cooperating individual, Kurt Walter stated that he used to keep it (marijuana) at his mother's house (25 Royal Road) but he was no longer able to use the property because

the house was on the market.  At the time Kurt Walter made these remarks, 25 Royal Road was, in fact, on the market.  Tomasetta Affidavit, Docket Entry 1, ¶ 24.

33.  Kim Frank ("Frank") was a customer of Kurt Walter from 1997 through 2003, after the death of Doris Walter.  Transcript of Deposition of Kim Frank, attached as Exhibit 3, at 31, 33.

34.  Frank paid Walter about $1,300 per pound of marijuana. Ex. 3 at 32.  Frank was, at the time, a long-time friend of Melissa Walter, and an assistant to Doris Walter while she was dying.  Ex. 2, at 50-54.

35.  Frank bought marijuana from Walter in a number of locations.  Ex. 3, at 40.

36.  Frank would meet Walter at his apartment as well as at 25 Royal Road (the Defendant Property).  Id.

37.  Frank would call Walter and talk with him, and then when she went to visit Doris Walter, she would say "let's just do this."  Ex. 3, at  42.

38.  On two or three occasions, Frank and Walter walked out into the backyard of 25 Royal Road (the Defendant Property), and Walter sold her marijuana in the backyard.  Ex. 3, at  40-46.

39.  On two other occasions, Frank bought marijuana from Walter in the kitchen of the Defendant Property.  Ex. 3, at  40-46.

40. These transactions occurred while Doris Walter was alive. Ex. 3, at 45.

41. There may have also been occasions when Frank bought marijuana from Walter at 25 Royal Road (the Defendant Property) after Doris Walter died. Ex. 3, at 45.

42. These transactions were for a pound of marijuana each time. Ex. 3, at 39, 45.

43. Frank had discussions with Melissa Walter about the fact that Kurt Walter was selling marijuana. Ex. 3, at 60. Melissa Walter also told Kim Frank about finding a scale with marijuana on it at 25 Royal Road (the Defendant Property). Id., at 63.

44. Walter acknowledges that he had more than one scale, and that the purpose of having a scale was to weigh out marijuana for distribution. Ex. 1, at 59, 58.

45. He had one electronic scale and he might have had other scales. Ex. 1, at 59.

46. The scale found at 25 Royal Road was an electronic scale. Photograph attached as Exhibit 4.

47. Walter kept his scales at his storage place and at his residence. Ex. 1, at 58-59.

48. Walter does not recall the following things (citing to pages from the transcript of Walter's deposition, attached as

Exhibit 1):

- a. whether there were any days between 2000 and 2003 when he did not smoke marijuana [p 36]
- b. The names of any of his customers for marijuana [p 36]
- c. how many customers he had, although it was "a fairly good amount" [p 36]
- d. how much he sold marijuana to Dan MacAuley for [p 38]
- e. when he started buying marijuana from co-defendant Douglas Bannerman [p 41]
- f. what his own cell phone number was when he dealt with Bannerman [p 42]
- g. whether he used the word paperwork to refer to marijuana proceeds [p 43-44]
- h. whether he used "schedule" or "hours" as code to refer to marijuana [p 44]
- i. where Bannerman's office was [p45]
- j. whether he negotiated with Bannerman about price [p 47]
- k. whether Bannerman ever sold him cocaine [p 47]
- l. whether he himself ever sold cocaine [p 49]
- m. when he first moved to the apartment at 30 Gardner Road [p 52]
- n. when he first rented the storage unit that he claims is the only location he ever stored marijuana in [p 53]
- o. the name of the storage company that he used for storing the marijuana from at least 2000 forward [p 54]
- p. the name of the storage unit that he used for storing the marijuana from at least 2000 forward [p 54]
- q. the name of the street where the storage unit was that he used for storing the marijuana from at least 2000 forward [p 54]
- r. how often his former business partner, John McCarthy, bought marijuana from him [p 56]
- s. how much marijuana he hid in the storage unit at any given time [p 57]
- t. how many scales he had for weighing marijuana [p 58]

- u.  whether John McCarthy bought marijuana on credit [p 63]
- v.  whether he got upset with customers for not paying on time [p 64]
- w.  how much marijuana he smoked at 25 Royal Road at any given time [pp 67-68]
- x.  whether he was using more cocaine after his mother's death [p 69]
- y.  what friends he invited to his mother's home after her death [p 70]
- z.  whether other people smoked marijuana at his mother's home after his death [pp 69-70]
- aa.  whether he smoked marijuana in front of other people at his mother's home after her death [p 70]
- bb.  whether he left a bag of marijuana at his mother's house [p 71]
- cc.  whether his sister called about marijuana he left at 25 Royal Road (his mother's house) [p71]
- dd.  with reference to the marijuana that his sister may have called him about leaving at their mother's house, whether he got it out or threw it away [p 72]
- ee.  with reference to the marijuana that his sister may have called him about leaving at their mother's house, how much marijuana it was [p 72]
- ff.  with reference to the marijuana that his sister may have called him about leaving at their mother's house, whether she called him a second time [pp 72-3]

```
                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney


                              By:   /s/ Nancy Rue
                                    NANCY RUE
                                    KRISTINA E. BARCLAY
                                    Assistant U.S. Attorneys
                                    United States Courthouse
                                    One Courthouse Way
                                    Suite 9200
                                    Boston, Massachusetts 02210
Dated: October 27, 2006             (617)748-3100
```

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

```
                                    /s/ Nancy Rue
                                    Nancy Rue
                                    Assistant United States Attorney
```

Date:    October 27, 2006