UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　Plaintiff,<br><br>v.<br><br>$722, 767.41 AS SUBSTITUTE <u>RES</u><br>FOR 25 ROYAL ROAD, BROOKLINE, MA,<br>　　　　　　Defendant.<br><br>KURT WALTER,<br>　　　　　　Claimant. | Civil Action No.<br>04-10191-DPW |

**CLAIMANT KURT WALTER'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

In its motion for partial summary judgment, the government asserts that the "United States has sustained its burden to show that 25 Royal Road, Brookline, Massachusetts (the "Defendant Property" or "*res*"), was used, or intended to be used, to facilitate the commission of narcotics violations, …" See *United States' Memorandum of Law in Support of its Motion for Partial Summary Judgment, p. 1*. The support for this proposition, for the purpose of seeking Summary Judgment, is set forth in the government's Rule 56.1 Statement. See *United States' Local Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Partial Summary Judgment* (hereinafter "Rule 56.1 Statement").[1] To establish its right to the real estate at 25 Royal Road, Brookline, Massachusetts (or the substitute *res*) for the purposes of this summary judgment proceeding, the government must establish that the undisputed evidence establishes that the real estate was "used, or intended to be used, in [a] manner or part, to

---

[1] The government filed with the Court exhibits as part of its Memorandum and Rule 56.1 Statement. Rather than re-file the same documents, the Claimant Kurt Walter will refer to the same material filed by the government and will use the exhibit numbers used by the government

commit or facilitate the commission of a violation of 21 U.S.C. §§841, 846, and/or 856." See *Verified for Forfeiture In Rem, ¶4*.  See 21 U.S.C. §881(a)(7).[2]  The instant Claimant, Kurt Walter (hereinafter "Kurt Walter"), submits that there is a real factual dispute between the parties that can only be resolved by a trial of the issues.  Kurt Walter submits that the facts are not undisputed and that the actual circumstances that will flow from the trial do not satisfy the predicate for forfeiting the disputed *res* to the United States.

Kurt Walter will respond to the government's assertions of "undisputed facts" *seriatim* as they are set out in the Rule 56.1 Statement to show that there is a real factual dispute between the parties that requires a trial on the merits.  See *United States v. One Parcel of Real Property with Bldgs., Appurtenances, and Improvements Known as 190 Colebrook Road, Town of Little Compton, R.I.* 743 F.Supp. 103 (D.R.I.,1990) wherein the Court held that "[a] motion for summary judgment should be granted only when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" [Citing Fed.R.Civ.P. 56].  The Court in *190 Colebrook Road* went on to state that "[i]n passing on such a motion, the Court must view the evidence in the light most favorable to the nonmoving party." [Citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 996, 8 L.Ed.2d 176 (1962) (per curiam); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990); *United States Fire Insurance Co. v. Producciones Padosa, Inc.,* 835 F.2d 950, 953 (1st Cir.1987)].  See also *United States v. One Lot of U.S. Currency Totalling $14,665*, 33 F.Supp.2d 47 (D.Mass,1998). (Summary

---

[2] 21 U.S.C.A. § 881(a)(7) – (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them: (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating the record, the court views the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.)

As a preliminary matter, Kurt Walter does not (and cannot) deny that he sold and smoked marijuana during the relevant period. However, such fact is not – in and of itself -- dispositive of the issue in the case at bar.

## CLAIMANT'S RESPONSE TO THE GOVERNMENT'S LIST OF UNDISPUTED FACTS

a.   In response to ¶11 of the government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that the "Defendant Property was owned by Doris M. Walter until her death on May 16, 2003. Under Doris Walter's will, the Defendant Property passed in equal parts to her children, Melissa and Kurt Walter. Docket 18, at ¶ 1." [3]

b.   In response to ¶12 of the government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that "Kurt Walter [] distributed marijuana consistently over the past twenty years. Transcript of Deposition of Kurt Walter, attached as Exhibit 1, at 32" **BUT**, the defendant specifically **DENIES** that he ever stored or distributed marijuana (or any other drug) in the Defendant Property. In response to questions at his deposition relative to where Kurt Walter would take marijuana that he purchased from Douglas Bannerman, Mr. Walter answered:

>   A.   I'd take it home.
>   Q.   When you say "home" you mean where?
>   A.   To my apartment.
>   Q.   Where is your apartment?
>   A.   30 Gardner Road.

*Government's Exhibit 1 (Deposition of Kurt Walter), p. 52.*

---

[3] For the sake of clarity, Claimant will use the numbering employed by the government for his responses herein.

Kurt Walter further testified at his deposition that he also stored marijuana at a storage space in Framingham.  See Government's Exhibit 1 (Deposition of Kurt Walter), pp. 52-57.

When pressed by the government's attorney as to whether he sold marijuana at the Defendant Property Mr. Walter responded in the negative:

> Q. Okay.  But, you never, ever met a customer at Royal Road [the Defendant Property]; is that right?
> A. Correct.  I never sold …
> Q. Now, you …
> A. I never sold marijuana at Royal Road.

*Government's Exhibit 1 (Deposition of Kurt Walter), p. 61.*

When asked by the government's attorney whether Mr. Walter received payment for marijuana that he had provided to a customer on credit at the Defendant Property, Mr. Walter testified:

> Q. Now, and when you are saying that none of these – none of these people – Did you ever get payment for marijuana at 25 Royal Road?
> A. No.
> Q. Never?
> A. No.
> Q. You're sure?
> A. Yes.

To 'close the loop' the government's attorney asked:

> Q. Okay.  So you're saying you never delivered any marijuana to anyone at 25 Royal Road and you never received any payments for marijuana at 25 Royal Road; is that right?
> A. Yes.
> …
> Q. You're absolutely sure of that?
> A. Yes.

*Government's Exhibit 1 (Deposition of Kurt Walter), p. 65.*

Not satisfied with Mr. Walter's unambiguous denial, the government's attorney further probed by asking:

> Q. …. Any why are you so sure about that?
> A. Because I never would have done anything of that nature in or around my mother or her house.  I had too much respect for her.

4

> Q. Even after your mother had passed away, you're sure that you never received any marijuana proceeds were sold any marijuana at 25 Royal Road?
> A. Yes.

*Government's Exhibit 1 (Deposition of Kurt Walter), p. 66.*

c.   In response to ¶13 of the government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that "From the year 2000 forward, Walter derived most of his income from the distribution of marijuana. *Ex. 1 at 34*." BUT, the Claimant **DENIES** storing, selling or receiving proceeds from drug transactions at the Defendant Property. See Response b. above, which is incorporated herein by reference.

d.   In response to ¶14 of the government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that he "constantly had a supply of marijuana." [Government's Exhibit 1, p. 34]; and that he met with his customers "all over." at bookstores, restaurants, Home Depot, parking lots – "there was no set specific place." [*Government's Exhibit 1 at 61*]. BUT, the Claimant **DENIES** storing, selling or receiving proceeds from drug transactions at the Defendant Property. See *Response b. above, which is incorporated herein by reference*.

e.   In response to ¶s15, 16, 17 & 18 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** the factual assertions set forth therein, BUT, the Claimant **DENIES** that a such fact(s), either by themselves or in conjunction with each other and/or when viewed with the others facts set out in the Government's Rule 56.1 Statement reasonably or logically support an inference that Kurt Walter used the real property at 25 Royal Road, or intended such real property to be used, "in [a] manner or part, to commit or facilitate the commission of a violation of 21 U.S.C. §§841, 846, and/or 856." The specific denials made by Kurt Walter at his deposition in response to the direct questions concerning his alleged use of the real property to facilitate his drug transactions further depreciates the strength of the inference the government impliedly urges. See *Response to paragraph b. above*, *which is incorporated herein by reference.*

f.   The Claimant **DENIES** that the "Intercepted telephone calls between MacAuley and Walter show that MacAuley bought marijuana from Walter at the Defendant Property. Docket 1, Tomasetta Affidavit, ¶ 23". The government's citation to establish such a fact as an admission is, at best, disingenuous. The government claims that Kurt Walter's counsel's lack of specific denial to a specific paragraph in the Pre-sentence Report constitutes an admission of the existence of such fact.[4] See *United States v. Milam* 443 F.3d 382 (4th Cir. 2006) ("Any admission of fact must, of course, be of sufficient clarity and kind to justify taking the fact from the jury. To presume, infer, or

---

[4] The government claims that the predicate for the fact set forth in this particular paragraph is contained within paragraphs 84-131 of Mr. Walter's PSR. With regard to such paragraphs, Mr. Walter responded as follows: "**Paragraphs (84) – (131)** do not relate to the defendant Walter and therefore require no response herein."

deem a fact admitted because the defendant has remained silent, however, is contrary to the Sixth Amendment. *See Sandstrom,* 442 U.S. at 521-24, 99 S.Ct. 2450; *Morissette,* 342 U.S. at 274-75, 72 S.Ct. 240; *United States v. United States Gypsum Co.,* 438 U.S. 422, 435 (1978) (noting that an element of a criminal offense "cannot be taken from the trier of fact through reliance on a legal presumption"). A presumption may not shift the burden of persuasion to the defendant. *See Patterson v. New York,* 432 U.S. 197, 214 (1977); *Sandstrom,* 442 U.S. at 524. Even when the government's facts go unanswered or unobjected to, the court may not in a criminal case tried to a jury direct a verdict in favor of the government. *See Sullivan v. Louisiana,* 508 U.S. 275, 277 (1993) (citing *Sparf v. United States,* 156 U.S. 51, 105-06 (1895)).

Similar to the situation in *Milam,* in the instant case, when Kurt Walter was sentenced the government moved to forfeit the Defendant Property based on the guilty plea and the PSR. Mr. Walter's counsel objected, telling the Court that the specific agreement with the government was that Mr. Walter would admit guilt, but deny any fact that would precipitate the forfeiture of the Defendant Property. After argument by both sides (specifically with reference to the changes in the Plea Agreement to excise the property at 25 Royal Road from the forfeiture judgment) this Court refused to order the real property forfeited. See *Sentencing Transcript, pp. ??-??*

g.      With regard to paragraphs 20, 21, 22, 23, 24, 25, 26 & 27, the basis for establishing the assertions set forth in these paragraphs as a "fact" that the transaction(s) took place at the Defendant Property falls prey to the same situation as set out in ¶f above. The supposed basis is the lack of a specific denial in the PSR. Additionally, to arrive at the alleged "fact" from the recitation of the intercepted telephone conversations one must accept the Agents interpretation of the meaning of the words used during an intercepted telephone conversation as the meaning understood by the parties to the conversation and, that such meaning is the only meaning to ascribe to such words.

h.      In response to ¶s 28, 29 & 30 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that the words set out as the voicemail message left by Melissa Walter to her brother on September 30, 2003 accurately reflect the message left. However, the Claimant questions the implication of the message. The government urges a reading of the message left by Ms. Walter that would imply that Kurt Walter was using the house at 25 Royal Road as a 'stash' pad to facilitate his drug transactions. The explanation of Melissa's observations of the "buds" on the floor of the basement at 25 Royal Road (given at her deposition) places a very different gloss on her observations. Her testimony at the deposition describes a situation more indicative of a 'personal use' of marijuana, rather than use of the house to package marijuana for sale. See *Government's Exhibit 2 (Melissa Walter Deposition), pp. 110-115*. She concluded her message to her brother by saying "no more dope and no parties and no hanging out up he[re] anymore." The Claimant further acknowledges that the next day Melissa Walter spoke with Kurt Walter and said:

>     MELISSA:    I'm, you need to get that digital scale out of Mum's house okay.
>     KURT:       Yeah

| | |
|---|---|
| MELISSA: | And you can't be doing that in the house. |
| KURT: | Melissa that thing has been there for a while. |
| MELISSA: | Well Kurt it was covered with weed. So I don't know how long a while is in your book, okay? |
| KURT: | Yeah |
| MELISSA: | And we wiped it off so. |
| KURT: | Okay |
| MELISSA: | You gotta get that out of there and there was just tons of buds all over the floor |
| KURT: | Okay. |

As with the message left the day before, the actual conversation between Melissa and Kurt reflects a complaint about the use of marijuana at the house rather than the use of the house as a depository for illegal distribution. See also, the *Response to paragraph b. above*.

i.  In response to the facts set forth at ¶31 of the Government's Rule 56.1 Statement, the Claimant agrees that Kurt Walter did not pick up the scale, and it was located by DEA in their search pursuant to warrant on December 2, 2003. Mr. Walter also agrees that DEA found a duffel bag in the basement of 25 Royal Road containing a ziplock bag of 113.2 grams of marijuana. This amount of marijuana, combined with the discovery of a larger amount at the Claimant's apartment at 30 Gardner Road, is evidence that the marijuana at Royal Road was for personal use rather than for re-sale.

j.  In response to the assertion set forth at ¶32 of the Government's Rule 56.1 Statement, the Claimant DENIES that any such conversation took place and directs the Court's attention to paragraph b. above. See also, *Government's Exhibit 6 (Kurt Walter's Objections to PreSentence Report), p. 3, Response to paragraph (36)* ("With regard to paragraph (36), the defendant denies ever having told CW-1 "that he had to move his marijuana stash location from his mother's house since it was on the market, and that the new stash location (the warehouse at 1 Watson Place, Framingham) would actually be convenient to CW-1's home.")

k.  In response to ¶s 33 & 34 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that Kim Frank testified at her deposition that she was a customer of Kurt Walter from 1997 through 2003, after the death of Doris Walter. See *Government's Exhibit 3 (Transcript of Deposition of Kim Frank) pp.31, 33. 34*. Ms. Frank testified that she paid Walter about $1,300 per pound of marijuana. The Claimant also acknowledges that Ms. Frank was, at the time, a long-time friend of Melissa Walter. BUT, the Claimant **DENIES** that such testimony can be considered an "undisputed" fact for the purposed of deciding the instant Summary Judgment Motion. Further, the Claimant specifically **DENIES** that he ever sold marijuana (or any other drug) to Ms. Frank at the Defendant Property. See *Response to paragraph b. above*.

The acceptance of such assertions made by Ms. Frank at the deposition as a "fact" is improper because the deposition was never concluded – the instant Claimant never had

the opportunity to cross-examine Ms. Frank or test the basis or credibility of her statements. Such lack of cross-examination is particularly relevant in the instant matter since Ms. Frank had (by implication) at least twice denied having purchased marijuana from Mr. Walter at the Defendant Property. See Government's Exhibit 2 (Deposition of Melissa Walter), p. 77 ("A. (by Ms. Walter): That she was buying pot from Kurt, but never at 25 Royal Road, that she was outside or at 30 Gardner, which was where his apartment was."). See also, *the DEA-6 of Ms. Frank's debriefing by the government provided to the Claimant at the time of Ms. Frank's Deposition* which will be provided to the Court at the time of the hearing.

l.     In response to ¶s 35 & 36 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that Ms. Frank testified at her deposition that she bought marijuana from Walter in a number of locations. See *Government's Exhibit 3 (Transcript of Deposition of Kim Frank) p.40*. BUT, the Claimant **DENIES** that he ever sold marijuana (or any other drug) to Ms. Frank at the Defendant Property. See *Response to paragraph b. above.*

     The acceptance of such assertions made by Ms. Frank at her deposition as a "fact" is improper because the deposition was never concluded – the instant Claimant never had the opportunity to cross-examine Ms. Frank or test the basis or credibility of her statements. Such lack of cross-examination is particularly relevant in the instant matter since Ms. Frank had (by implication) at least twice denied having purchased marijuana from Mr. Walter at the Defendant Property. See *Government's Exhibit 2 (Deposition of Melissa Walter), p. 77* ("A. (by Ms. Walter): That she was buying pot from Kurt, but never at 25 Royal Road, that she was outside or at 30 Gardner, which was where his apartment was."). See also, *DEA-6 provided to the Claimant at the time of Ms. Frank's Deposition which will be provided to the Court at the time of the hearing.*

m.     In response to ¶s 37 & 38 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that Ms. Frank testified at her deposition that she would call Walter and talk with him, and then when she went to visit Doris Walter, she would say "let's just do this." Ex. 3, at 42 and that on two or three occasions, she and Walter walked out into the backyard of 25 Royal Road (the Defendant Property), and Walter sold her marijuana in the backyard. Ex. 3, at 40-46. BUT, the Claimant **DENIES** that he ever sold marijuana (or any other drug) to Ms. Frank at the Defendant Property.

     The acceptance of such assertions made by Ms. Frank at the deposition as a "fact" is improper because the deposition was never concluded – the instant Claimant never had the opportunity to cross-examine Ms. Frank or test the basis or credibility of her statements. Such lack of cross-examination is particularly relevant in the instant matter since Ms. Frank had (by implication) at least twice denied having purchased marijuana from Mr. Walter at the Defendant Property. See Government's Exhibit 2 (Deposition of Melissa Walter), p. 77 ("A. (by Ms. Walter): That she was buying pot from Kurt, but never at 25 Royal Road, that she was outside or at 30 Gardner, which was where his apartment was."). See also, *DEA-6 provided to the Claimant at the time of Ms. Frank's Deposition which will be provided to the Court at the time of the hearing.*

8

n.      In response to ¶s 39 & 40 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that Ms. Frank testified at her deposition that on two other occasions (while Doris Walter was alive). Ex. 3, at 45) she bought marijuana from Walter in the kitchen of the Defendant Property. Ex. 3, at 40-46.  BUT, the Claimant **DENIES** that he ever sold marijuana (or any other drug) to Ms. Frank at the Defendant Property.

The acceptance of such assertions made by Ms. Frank at the deposition as a "fact" is improper because the deposition was never concluded – the instant Claimant never had the opportunity to cross-examine Ms. Frank or test the basis or credibility of her statements.  Such lack of cross-examination is particularly relevant in the instant matter since Ms. Frank had (by implication) at least twice denied having purchased marijuana from Mr. Walter at the Defendant Property.  See Government's Exhibit 2 (Deposition of Melissa Walter), p. 77 ("A. (by Ms. Walter): That she was buying pot from Kurt, but never at 25 Royal Road, that she was outside or at 30 Gardner, which was where his apartment was.").  See also, *DEA-6 provided to the Claimant at the time of Ms. Frank's Deposition which will be provided to the Court at the time of the hearing.*

o.      In response to ¶ 41 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that Ms. Frank testified at her deposition that "[t]here may have also been occasions when Frank bought marijuana from Walter at 25 Royal Road (the Defendant Property) after Doris Walter died. Ex. 3, at 45".  BUT, the Claimant **DENIES** that he ever sold marijuana (or any other drug) to Ms. Frank at the Defendant Property.

The acceptance of such assertions made by Ms. Frank at the deposition as a "fact" is improper because the deposition was never concluded – the instant Claimant never had the opportunity to cross-examine Ms. Frank or test the basis or credibility of her statements.  Such lack of cross-examination is particularly relevant in the instant matter since Ms. Frank had (by implication) at least twice denied having purchased marijuana from Mr. Walter at the Defendant Property.  See *Government's Exhibit 2 (Deposition of Melissa Walter), p. 77* ("A. (by Ms. Walter): That she was buying pot from Kurt, but never at 25 Royal Road, that she was outside or at 30 Gardner, which was where his apartment was.").  See also, DEA-6 provided to the Claimant at the time of Ms. Frank's Deposition.  Additionally, the assertion that something "may" have occurred is not evidentially sufficient to establish that such an event 'did" occur.

p.      In response to ¶42, 43, 44, 45, 46 & 47 of the Government's Rule 56.1 Statement, the Claimant **ACKNOWLEDGES** that statements relating to each such assertion was testified to by the deponent where cited by the government.  The Claimant **DENIES** that each such fact(s), either by itself or in conjunction with each other and/or when viewed with the others facts set out in the Government's Rule 56.1 Statement reasonably or logically support an inference that Kurt Walter used the real property at 25 Royal Road, or intended such real property to be used, "in [a] manner or part, to commit or facilitate the commission of a violation of 21 U.S.C. §§841, 846, and/or 856."  The specific denials made by Kurt Walter at his deposition in response to the direct questions concerning his alleged use of the real property to facilitate his drug transactions further depreciates the

9

strength of the inference the government impliedly urges. See the response to paragraph b. above.

q.	As further support for its motion for summary judgment, the government set forth a number of details that Mr. Walter did not recall at his deposition. Although he may not have remembered all the minute details he was asked about at the deposition, he did recall the facts surrounding the most important issue relevant to the case at bar – that he did not conduct any drug transactions at the Defendant property, i.e., that he did not 'use, or intend to be use the property at 25 Royal Road, in [a] manner or part, to commit or facilitate the commission of a violation of 21 U.S.C. §§841, 846, and/or 856.'

## CLAIMANT'S ARGUMENT IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The government's evidence in support of judgment (summary or otherwise) appears to fall into four (4) separate categories: (1) inferences to be drawn from the Claimant's admitted participation in selling marijuana as related in his deposition [see paragraphs a through e above]; (2) inferences drawn from intercepted conversation between Kurt Walter and Daniel MacAuley and observation made by the investigating agents [paragraphs f through g above]; (3) inferences drawn from the observations and telephone messages of the Claimant's sister, Melissa Walter and the subsequent discovery and seizure of items at 25 Royal Road [paragraphs h through j above]; and, (4) the deposition testimony of Kim Frank combined with alleged lapses in memory by Kurt Walter with regard to particular details of his past activity [paragraphs k through q above].

**(1)	THE DEPOSITION TESTIMONY OF KURT WALTER.**

The issue before the Court is NOT whether Kurt Walter sold marijuana; that issue was resolved when Mr. Walter pled guilty before this Court on August 26, 2005. The issue that must be decided in this forfeiture proceeding is whether Kurt Walter used the premises at 25 Royal Road to transact his drug business or used the property to facilitate

that drug business. Relative to the summary judgment standard, the government's enumeration of the deposition testimony of Kurt Walter does not address the question of the "use" of the *res* directly; rather, the government recites various testimony of Mr. Walter that would require an inference to be drawn by this Court. The circumstantial evidence from which the necessary inference must be drawn is directly contrary to the specific responses by Mr. Walter at the deposition that he never used the res to store of sell drugs. This conflict between the evidence is sufficient to prevent summary judgment in this case.

As further support for the circumstantial evidence and the urged inference that the property was used to facilitate Mr. Walter's drug business, the government proffers Mr. Walter's counsel's failure to deny statements made in the PSR as constituting an admission of such facts for the purpose of this Summary Judgment Motion. Such reliance is misplaced and inappropriate in this matter for the reasons cited above in paragraph f above.

    **(2)**    **KURT WALTER'S INTERACTION WITH DANIEL MACAULEY.**

Originally, the government's claim for forfeiture was based solely on the intercepted telephone conversations with MacAuley and the subsequent observations made by the agents as set out above. With respect to this evidence, the government argued previously that this circumstance alone established "extremely strong evidence that the Defendant Property was used to facilitate Kurt Walter's drug trafficking." See <u>United States' Opposition to Kurt Walter's Motion for Leave to File a Late Claim</u> at 11. In truth, this evidence is sorely lacking in establishing a connection between the Defendant Property and any alleged drug trafficking. The supposed undisputed facts set

forth in paragraphs 19 through 27 of the government's Rule 56.1 Statement primarily consists of alleged evidence set forth in the affidavit of an FBI agent involved in the investigation – including the partial transcriptions of intercepted telephone conversations. See *Affidavit of Agent Brian Tomasetta, attached as Exhibit A to <u>Verified Complaint for Forfeiture in Rem</u>*. This affidavit refers to vague and cryptic statements made during telephone conversations recorded via wire-tap; these statements fail to indicate clearly whether drug trafficking ever occurred in connection with the Defendant Property.

The affidavit's allegation that Mr. Walter engaged in a drug transaction in connection with the Defendant Property is based on mere suspicion. At no time did government agents actually see any money or any drugs exchanged. The agent concludes that a drug transaction occurred based on little more that Walter's cryptic statements to MacAuley and the use of words that the Agent claims are code words for drugs. These statements combined with observations of MacAuley carrying "something" out of 25 Royal Road is the basis for the Agents conclusion that the real estate was being used to store and sell marijuana. In contrast to many drug cases, the government has no evidence of having conducted a controlled purchase of any drugs via an informant or an undercover agent at the *res*. <u>Cf.</u> *United States v. Reddrick*, 90 F.3d 1276, 1280- 81 (7th Cir.1996) (finding that although confidential informant's information alone could not support probable cause determination, added testimony of controlled buys did). Nor is there any evidence that any of the substances found in the search were determined to be drugs, rather than merely suspected of being drugs. <u>Cf.</u> *United States v. 5 Bell Rock Road*, 896 F.2d 605, 607 (1st Cir.1990) (police lab report showing that "dried vegetation" found in search was marijuana). See Also *United States v. Parcel of Land and Residence*

12

*at 28 Emery Street, Merrimac, Mass.*, 914 F.2d 1, 5-6 (1st Cir.1990) (holding that informant's testimony, telephone calls with vague references to a drug deal, and seized drug paraphernalia did not establish enough evidence to support summary judgment for the government in forfeiture action).

  **(3) THE STATEMENTS OF MELISSA WALTER**

  The observations made by Ms. Walter, as evidenced by her telephone message to her brother, and as set forth in her deposition, are more consistent with 'personal' use than a use of the residence to facilitate Kurt Walter's drug business. See *paragraphs h through j above*. See also United States v. Premises Known as RR No. 1 Box 224, Dalton, Scott Tp. and North ···, 14 F.3d 864 (3rd Cir. 1994)( The fact that Winslow admits to storing cocaine on the defendant property for his own personal use is insufficient standing alone to support forfeiture of the defendant property. Section 881(a)(7) directs forfeiture of property used to facilitate a violation of the federal drug laws, which is punishable by " *more than one year's* imprisonment····" 21 U.S.C.A. §881(a)(7) (emphasis added). Evidence supporting a finding that Winslow merely possessed a controlled substance on the property, as opposed to his possession there with an intent to distribute it, is a violation of 21 U.S.C.A. § 844).

  Section 844(a) provides: (a) Simple Possession: It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order···· Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined···· Thus, the forfeiture statute does not apply to a violation of the

13

federal drug laws which consists of mere possession because it requires that the alleged violation be punishable by more than one year of imprisonment.

In the context of the instance motion, any inference of a use or intended use that would trigger a forfeiture that might be drawn from such statements by Melissa Walter is directly contradictory to the unambiguous testimony of Kurt Walter that he never stored, sold or used the residence to facilitate his drug business. This conflict in the evidence would militate against summary judgment being granted on this record.

**(4)     THE DEPOSITION TESTIMONY OF KIM FRANK.**

Kimberly Frank testified at her deposition that she purchased marijuana from Kurt Walter at 25 Royal Road. She previously spoke with the government and never mentioned that she purchased marijuana from Mr. Walter at 25 Royal Road. Additionally, she spoke with Melissa Walter and indicated that she never purchased marijuana at the residence. Ms. Frank's deposition was never concluded and the Claimant never had an opportunity to cross-examine Ms. Frank. Ms. Frank's testimony is directly contradictory to the testimony of Kurt Walter. This conflict can only be resolved at trial.

For all of the reasons set forth herein, Kurt Walter asks the the government's Motion for Partial Summary Judgment be denied and the matter be set down for trial.

                                                Respectfully submitted,
                                                Kurt Walter, Claimant,
                                                By his attorney

                                                _____
                                                William J. Cintolo, BBO No. 084120
                                                COSGROVE EISENBERG & KILEY
                                                One International Place, Suite 1820
                                                Boston, MA 02110
                                                617.439.7775 (telephone)
                                                617.330.8774 (fax)
Dated: December 27, 2006               WCintolo@AOL.COM (email)