UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>v.<br><br>$722, 767.41 AS SUBSTITUTE RES<br>FOR 25 ROYAL ROAD, BROOKLINE, MA,<br>　　　　Defendant.<br><br>KURT WALTER,<br>　　　　Claimant. | Civil Action No.<br>04-10191-DPW |

**CLAIMANT KURT WALTER'S TRIAL MEMORANDUM**

　　　　The real estate that is the subject of the forfeiture in the instant case is 25 Royal Road, Brookline, Massachusetts. For the vast majority of the time involved in the case the real estate was owned by Doris Walter. Doris Walter is the mother of the Claimant, Kurt Walter. Doris Walter died on May 16, 2003. The real estate was left to the Claimant, Kurt Walter and his sister Melissa in Doris Walter's will. Prior to Doris Walter's death, Kurt Walter had no ownership or other interest in the real property.

　　　　For the purposes of the issues in this case there are two distinct relevant time periods: (1) the period of time before Doris Walter's death, and (2) the period of time after Doris Walter died. With regard to the first period of time, the gist of the government's case is two fold; (1) that prior to Doris Walter's death, Kurt Walter stored marijuana in the house (testimony of Michelle Cappolla) and, on a couple of occasions delivered marijuana to a customer either in the back yard or in the kitchen at 25 Royal Road. For the period of time after Doris Walter died, the government's case appears to be focused on Kurt Walter's use of the real estate as a storage facility for marijuana. See

*Kyros v. Chase*, Not Reported in N.E.2d, 2004 WL 1622039 (Mass.Land Ct.,2004) ("[t]he title [to the decedent's real property] vests immediately in the heirs if there is no will, or passes to the devisees if there is one." GUY NEWHALL, SETTLEMENT OF ESTATES AND FIDUCIARY LAW IN MASSACHUSETTS § 86 (4th ed.1958).)

### A. THE ACTS OF KURT WALTER AT 25 ROYAL ROAD PRIOR TO DORIS WALTER'S DEATH COULD NOT FORM THE PREDICATE FOR THE FORFEITURE OF THE REAL ESTATE TO THE UNITED STATES.[1]

The analysis to determine whether the government has a right to the real estate at 25 Royal Road must begin with a determination that the property is forfeitable to the United States because of the acts of Kurt Walter, committed without the knowledge or complicity of his mother, Doris Walter. The government's apparent justification for its claim is the coalescence of two related proposition of forfeiture law: (1) that forfeiture statutes are premised on the notion that the thing to be forfeited has itself offended society, either because it is contraband or because it has been used to violate laws, and (2) the common-law relation back doctrine applied to *in rem* forfeitures.[2]

The government's reasoning would presumably be that when Kurt Walter stored marijuana at 25 Royal Road for later sale to his customers – or passed marijuana to a

---

[1] Kurt Walter does not concede that the alleged acts actually occurred, but assumes the existence of the facts for the sake of argument.

[2] See See *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-684 (1974). (That doctrine applied the fiction that property used in violation of law was itself the wrongdoer that must be held to account for the harms it had caused. Because the property, or "*res*," was treated as the wrongdoer, it was appropriate to regard it as the actual party to the *in rem* forfeiture proceeding. Under the relation back doctrine, a decree of forfeiture had the effect of vesting title to the offending *res* in the Government as of the date of its offending conduct."

customer in the kitchen of the house – he performed an act that formed the predicate for the property to be forfeited to the United States. From that moment, title to the real estate was tainted and a right to the title to the property vested in the United States. The government's reasoning would proceed – notwithstanding that title could not be wrested from Doris Walter – that once Doris died and title passed to Kurt, by operation of law through probate, the application of the relation-back concept would provide the government with the right to title to the real estate. In order for the relation-back concept to work, the property would have to have been forfeitable at the time Kurt Walter committed the acts at the property.[3]

> The relevant statute in the case at bar (§ 881(a)(7)) provides:
>
> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> "(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Prior to Doris Walter's death, Kurt Walter had no "ownership" or other possessory interest in the real estate at 25 Royal Road. See *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232 (D.C Md. 1987), affd. en banc 889 F.2d 1317 (4th Cir. 1989) (heirs had a

---

[3] Pursuant to 18 U.S.C. § 983(c), the government has the burden of proving that the property is subject to forfeiture by a preponderance of the evidence. Additionally, because the government alleges that the property was used to commit or to facilitate the commission of a criminal offense, the government must establish that there is a substantial connection" between the property and the offense. 18 U.S.C. § 983(c)(3).

mere expectancy). In the context of the case at bar, the question must be whether a stranger to the title – who does not have a possessory interest – subjects the title to real estate to forfeiture? If Kurt Walter did not subject the real estate to be forfeited by his acts, then the relation-back theory would be inapplicable and good title would have passed to Kurt through the probate of his mother's estate.

Examining an analogous forfeiture statute (21 U.S.C. § 853(c)) in *United States v. Bailey*, 419 F.3d 1208, 18 Fla. L. Weekly Fed. C 814 (11th Cir. 2005), the Court stated that in *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), the Supreme Court had explained the legal effect of this relation-back provision as follows:

> As soon as [the possessor of the forfeitable asset committed the violation] of the internal revenue laws, the forfeiture under those laws took effect, and (though needing judicial condemnation to perfect it) operated from that time as a statutory conveyance to the United States of all the right, title and interest then remaining in the [possessor]; and was as valid and effectual, against all the world, as a recorded deed. The right so vested in the United States could not be defeated or impaired by any subsequent dealings of the ... [possessor]. (Brackets in original)

*Caplin & Drysdale,* at 627(quoting *United States v. Stowell,* 133 U.S. 1, 19 (1890)) (alterations and omissions in *Caplin & Drysdale* ).

The *Bailey* Court went on to say that there are "[t]wo things are notable about this statement of the doctrine. First, the Court referred to the wrongdoer as the "possessor" of the forfeitable assets even though, by operation of the statutory relation-back provision, he had already lost all "right" and "title" in them. Second, although the Court stated that the forfeiture "took effect" at the time of the wrongdoing, it also observed that, like a lienholder, the Government still "need[ed] judicial condemnation to perfect it." Citing *United States v. 92 Buena Vista Ave.,* 507 U.S. 111, 125-27 & n. 20 (1993).

Thus, since the property was not forfeitable in the hands of Doris Walter, the relation-back theory does not affect title when the real estate was received the executrix of Doris Walter's estate and subsequently sold in order to distribute the proceeds to the heirs.[4]

**B.    THE ACTS OF KURT WALTER AFTER THE DEATH OF DORIS WALTER.**

The evidence presented by the government regarding the acts of Kurt Walter after the death of his mother are insufficient to meet its burden to show a substantial, or any, connection between the real estate at 25 Royal Road and Kurt Walter's drug business after the death of his mother on May 16, 2003.

**C.    THE FORFEITURE OF THE DEFENDANT PROPERTY WOULD CONSTITUTE AN EXCESSIVE FINE.**

The forfeiture of Kurt Walter's right to the proceeds of the sale of his mother's house are in the nature of an additional fine imposed for his criminal activity. A fine will violate the excessive fines clause of the eighth amendment if it is grossly disproportional to the gravity of the offense. Kurt Walter was a small supplier of marijuana, making about $30,000 a year for the three years preceding his arrest. Taking all the proceeds from the sale of his mother's house would be grossly disproportionate to the offense he committed.

---

[4]  The decision to sell the real estate and distribute the proceeds had been made before the government brought either the criminal action against Kurt Walter or the instant civil forfeiture action.

For all of the reasons set forth herein and the arguments of counsel at trial, Kurt Walter asks that the Court find for the Claimant and deny the government's action for forfeiture.

                                                Respectfully submitted,
                                                Kurt Walter, Claimant
                                                By his attorney,

                                                /s/ William J. Cintolo
                                                _____
                                                William J. Cintolo, BBO No. 084120
                                                COSGROVE EISENBERG & KILEY
                                                One International Place, Suite 1820
                                                Boston, MA 02110
                                                617.439.7775 (telephone)

Dated: August 21, 2007